**Joan Ann MAZZA and Robert Porr, Plaintiffs,**

v.

**The HENDRICK HUDSON CENTRAL SCHOOL DISTRICT, Virginia C. Rederer, individually and as Superintendent, the Hendrick Hudson Board of Education, Gail Horgan, individually and as President, Peter Walker, individually and as Vice-President, Edward J. Flynn, individually and as Trustee, Robert Laibowitz, individually and as Trustee, Russell Markman, individually and as Trustee, Defendants.**

**No. 94 Civ. 8463 (BDP).**

United States District Court, S.D. New York.

Oct. 8, 1996.

⬛

---

James B. Fishman, Jeffrey E. Glen, Fishman & Neil, New York City, for Plaintiff.

Raymond G. Kuntz, Leah Murphy, Raymond G. Kuntz III, Bedford Village, NY, for Defendants.

## MEMORANDUM DECISION
## AND ORDER

PARKER, District Judge.

Plaintiffs, Joan Ann Mazza and Robert Porr ("plaintiffs"), bring claims for violation of First Amendment rights of free speech under 42 U.S.C. § 1983, for malicious prosecution, and for defamation. Defendants, Hendrick Hudson School District, ("the District"), Virginia C. Rederer ("Rederer"), the Hendrick Hudson Board of Education ("the Board"), Gail Horgan ("Horgan"), Peter Walker ("Walker"), Edward J. Flynn ("Flynn"), Robert Laibowitz ("Laibowitz"), Richard Levinson ("Levinson"), and Russell Markman ("Markman"), move for summary judgment pursuant to F.R.C.P. 56(c) on the free speech claim, and move to dismiss the malicious prosecution and defamation claims pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## FACTS

Plaintiffs allege the facts in the complaint as follows: Mazza served as the President of the Parent Teacher Association ("PTA") of the Furnace Woods Elementary School ("FWS") in Cortlandt Manor, New York from 1991 to 1993. In 1993, Porr was a candidate for election as a trustee to the Hendrick Hudson Board of Education.

In 1993, defendants began taking steps to remove the school's Principal, Dr. Joanne Falinski ("Falinski"). Defendants' reasons for removing Falinski were not made public at that time, although it was later revealed that Falinski allegedly denied certain students their special education entitlements. Many members of the community, including Mazza and Porr were Falinski supporters; they proceeded, on their own volition, to thwart defendants' attempt to remove her.

In September, 1993, the Board voted 6–1 to suspend Falinski. In October, 1993, Falinski pursued her rights under New York Education Law § 3020–a to have a public hearing on the charges against her. Falinski released to the general public the information that she had been charged with denying certain special education services to several FWS students. Falinski denied engaging in this conduct.

In late October, defendants commenced an action in the Supreme Court of the State of New York, County of Westchester, against Mazza and Porr. Defendants alleged that Mazza and Porr acted as agents for Falinski by distributing the written charges against her, and by threatening to disclose the identity of the student complainants. Defendants sought a temporary restraining order ("TRO") which would enjoin Mazza and Porr from:

> distributing the charges filed against Joanne Falinski by the Hendrick Hudson Board of Education under § 3020–a of the Education Law, or any version thereof ... (and)

> from disseminating any information which would identify or reasonably lead to the identity of any student named in the charges filed against Joanne Falinski by the Hendrick Hudson Board of Education under section 3020–a of the Education Law.

Mazza and Porr allege that the defendants failed to provide the court with any legal authority or memoranda supporting their TRO application.

On October 27, 1993, Judge Colabella of the Supreme Court granted defendants' motion for a temporary restraining order. On

November 12, 1993, counsel for both sides appeared before Justice Rosato of the Supreme Court of the State of New York of the County of Westchester, for oral arguments on defendants' motion for a preliminary injunction against Falinski, her attorney, Mazza, and Porr. Plaintiffs assert that defendants' memorandum of law in support of the preliminary injunction cited no legal authority for the court to enjoin plaintiffs.

On November 23, 1993, Justice Rosato dismissed the complaint against plaintiffs with prejudice, finding that defendants had failed to present any evidence which demonstrated that Mazza and Porr had engaged in the conduct alleged by the District. Defendants appealed to the Supreme Court of New York, Appellate Division, Second Department, and sought another preliminary injunction to enjoin not only Falinski, her attorney, and also "all persons acting on their behalf." On April 13, 1994, the Appellate Division denied defendants' application. Defendants moved to reargue on April 19, 1994. On May 9, 1994, the Appellate Division denied that application.

Mazza and Porr filed this action in Federal District Court for the Southern District of New York on January 4, 1995. Defendants move for summary judgment on the § 1983 claim, and for dismissal on the pendant state claims for failure to state a claim upon which relief can be granted.

## DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The Court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

*McNeil v. Aguilos,* 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)).

The responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. *Pollis v. New School for Social Research,* 829 F.Supp. 584, 589 (S.D.N.Y.1993) (citing *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted)). Rather, the responding party must show the existence of a disputed material fact in light of the substantive law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *McNeil,* 831 F.Supp. at 1082 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994–95, 8 L.Ed.2d 176 (1962) (per curiam) (other citations omitted)). *See also Coach Leatherware Co., Inc. v. AnnTaylor, Inc.,* 933 F.2d 162, 167 (2d Cir.1991) (*Knight v. U.S. Fire Ins.,* 804 F.2d 9 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (other citations omitted).

### B. Freedom of Speech

Mazza and Porr first claim that defendants retaliated against them for exercising their First Amendment rights.

We note at the outset that central to our constitutional democracy is the right to speak freely on political or social matters without fear of retribution by the government. See *Cohen v. California,* 403 U.S. 15, 24, 91 S.Ct. 1780, 1787–88, 29 L.Ed.2d 284 (1971); *Palko v. Connecticut,* 302 U.S. 319, 326–327, 58 S.Ct. 149, 152–53, 82 L.Ed. 288 (1937). Moreover, "[w]henever under color of state law unfavorable action is taken against a person on account of that person's political activities or affiliation, it raises First Amendment concerns." *Lieberman v. Reisman,* 857 F.2d 896, 900 (2d Cir.1988). The Supreme Court has additionally held that "[a]ny prior restraint on expression comes to

this Court with a 'heavy presumption' against its validity." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577–78, 29 L.Ed.2d 1 (1971) (citations omitted).

Defendants mount several arguments in opposition to plaintiffs' § 1983 claim. They assert that (1) Mazza and Porr have failed to show the requisite "chilling" effect that the TRO may have had on their First Amendment rights, (2) Mazza and Porr have similarly failed to show a requisite constitutional injury in order to make out a claim for "retaliation" under 42 U.S.C. § 1983, and (3) in the alternative, all defendants are entitled to immunity for any wrongdoing.

### 1. § 1983 Action Against Defendants in their Official Capacities

■ It is well established in the Second Circuit that there is no cause of action available for damages under section 1983 against a school board or its members in their official capacities. See *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (holding that neither a State nor its officials acting in their official capacities are "persons" under § 1983); *Gentile v. Wallen,* 562 F.2d 193, 195 (2d Cir.1977); *Mazurek v. Wolcott Board of Education,* 815 F.Supp. 71, 77 (D.Conn.1993); *Lombard v. Board of Education of the City of New York,* 440 F.Supp. 577, 583 (E.D.N.Y. 1977). Thus, plaintiffs' claim for damages against defendants in their official capacities under 42 U.S.C. § 1983 is dismissed.

### 2. Chilling Effect

■ We must now address whether Mazza and Porr have made out a prima facie case under § 1983 against defendants in their individual capacities. If the alleged violation is based on a "chill" of one's First Amendment rights, a plaintiff must prove that she was "actually chilled" in the exercise of her rights. *Davis v. Village Park II Realty,* 578 F.2d 461, 464 (2d Cir.1978). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154

(1972), *rehearing denied,* 409 U.S. 901, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972). Moreover, "even in the First Amendment context, the plaintiff is not excused from the requirement that the facts as alleged must state a cause of action." *Graff v. City of Chicago,* 9 F.3d 1309, 1322 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 464 (1994) (citation omitted). "Vague assertions of unfairness on the part of the government, without more, cannot be molded by the court into constitutional violations." *United States v. M. Genzale Plating, Inc.,* 723 F.Supp. 877, 885 (E.D.N.Y.1989).

■ Defendants assert that, because Mazza and Porr publicly disavowed any intention to release the names of the student complainants, plaintiffs have failed to make out a claim that they suffered the requisite "chilling" of their First Amendment rights, regardless of the wording of the TRO. We disagree. Mazza and Porr have specifically alleged that, as a direct and proximate result of defendants' conduct, plaintiffs' lawful exercise of their First Amendment rights "were directly chilled, curtailed and diminished, in the following manner:

"a. The plaintiffs refrained from drafting, or participating in the drafting, of further petitions or letters to the defendants or local newspapers, in connection with any aspect of the Falinski matter;

"b. The plaintiffs refrained from organizing community meetings in connection with mobilizing support for Dr. Falinski and in opposition to the defendants' efforts to remove her;

"c. The plaintiffs refrained from speaking out at public meetings of the defendant Board;

"d. The plaintiffs refrained from engaging in efforts to publicly support Dr. Falinski and to publicly oppose the defendants' efforts to remove her;

"e. The plaintiffs refrained from publicly participating in the defendant Board's elections held in May 1994;

"f. The plaintiffs refrained from acting in a leadership role in connection with issues concerning their school district and FWS;

"g. Mr. Porr chose not to seek election to a seat on the defendant Board in its May 1994 elections in which the defendant Walker and the defendant Levinson ran for re-election;

"h. Mrs. Mazza refrained from seeking to assume a leadership role in the FWS Parent Teacher Association."

In addition, the TRO issued by Judge Rosato did not specifically proscribe infringement on Mazza and Porr's First Amendment rights. Thus, we find that Mazza and Porr have alleged an acceptable claim of a "chill" to withstand summary judgment. Accordingly, we find that plaintiffs allegations of chill are sufficient at this stage in the litigation.[1]

### 3. Retaliation

■ Defendants also claim that the "retaliation" claim should be dismissed, not because defendants had no retaliatory motive, but because Mazza and Porr have not alleged a sufficient constitutional injury as a result of the TRO. However, because we find that the complaint sufficiently alleges a constitutional injury, this motion is denied. Moreover, defendants' retaliatory motive, if proven, could lead a reasonable jury to find that defendants' conduct abridged their First Amendment rights in retaliation for their support of Falinski.

### 4. Immunity

Defendants argue in the alternative that, regardless of any culpability, they are all entitled to absolute immunity, because they are municipality executives who brought the TRO action pursuant to their duties owed to the town by law. Citing *Spear v. Town of West Hartford,* 954 F.2d 63 (2d Cir.1992), *cert. denied,* 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992), they argue that "when a high executive officer of a municipality authorizes a civil lawsuit in pursuit of that munici-

pality's governmental interests, absolute immunity attaches." *Spear,* 954 F.2d at 66. They assert that their actions in obtaining the TRO were closer to legislative actions than administrative school actions. We disagree.

■ Courts grant state actors absolute immunity only in rare instances, usually reserving it for a limited number of state actors such as town legislators, prosecutors, and judges. In *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), the Supreme Court recently noted that "[m]ost public officials are entitled only to qualified immunity." *Buckley,* 509 U.S. at 268, 113 S.Ct. at 2613. The Court further held that "[e]ven when we can identify a common-law tradition of absolute immunity for a given function, we have considered 'whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions.' Not surprisingly, we have been 'quite sparing' in recognizing absolute immunity for state actors in this context." *Buckley,* 509 U.S. at 269, 113 S.Ct. at 2613–14 (quoting *Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 2824–25, 81 L.Ed.2d 758 (1984)). Likewise, our Court of Appeals held that "[b]ecause qualified immunity is presumed to be sufficient to protect public officials in the exercise of their discretionary duties, absolute immunity extends only so far as necessary to protect the judicial process." *Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir.1995) (citing *Burns v. Reed,* 500 U.S. 478, 485–487, 111 S.Ct. 1934, 1938–40, 114 L.Ed.2d 547 (1991)); see also *Spear,* 954 F.2d at 66 ("absolute immunity, because it detracts from section 1983's broadly remedial purpose, applies only to a limited class of officials and functions.").

■ The record indicates that defendants were acting in the capacity of school officials

---

1. In fact, a plaintiff asserting a "chilling" claim may only have to assert that, because of the challenged ordinance, "he does not speak or act as he *says* he wants to." *Barker v. State of Wisconsin Ethics Board,* 815 F.Supp. 1216, 1220 (W.D.Wis.1993) (quoting *National Student Ass'n v. Hershey,* 412 F.2d 1103, 1111 (D.C.Cir.1969)) (emphasis added). In the context of a ripeness challenge, a district court recently held that a mere allegation of "chilling" sufficiently pre-

sented "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical and abstract." *Barker,* 815 at 1219 (quoting *Indiana Voluntary Firemen's Ass'n v. Pearson,* 700 F.Supp. 421 (S.D.Ind.1988)). However, because plaintiffs' complaint in the case at bar specifically sets forth the basis for the "chilling" allegation, we do not pass on this question.

when they instituted the proceedings against Mazza and Porr. In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court held that it would be improper to extend absolute immunity for school officials, in that "absolute immunity . . . would not sufficiently increase the ability of schools to exercise their discretion in a forthright manner . . ." *Wood,* 420 U.S. at 320, 95 S.Ct. at 1000; see also *Stewart v. Baldwin County Board of Education,* 908 F.2d 1499, 1508 (11th Cir.1990) (using *Wood* holding to bar absolute immunity to school board members who allegedly discharged employee in retaliation for his walking out on school meeting); *Mazurek,* 815 F.Supp. at 77 ("Public school officials performing discretionary functions generally are protected by a qualified good faith immunity from liability for damages under 42 U.S.C. § 1983."). Thus, we decline to extend absolute liability to the defendants.[2]

■ Defendants assert in the alternative that they are entitled to qualified immunity in their individual capacities. A school official is entitled to qualified immunity from a § 1983 action insofar as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or even where the rights were clearly established, if it was objectively reasonable to believe that his acts did not violate those rights. *Buckley,* 509 U.S. at 268, 113 S.Ct. at 2613; *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Wood,* 420 U.S. at 318, 95 S.Ct. at 998–99; *Hill,* 45 F.3d at 663; *Frank v. Relin,* 1 F.3d 1317, 1327–1328 (2d Cir.1993), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *Mozzochi v. Borden,* 959 F.2d 1174, 1177 (2d Cir.1992). Under this analysis, school officials are entirely shielded from civil damages so long as they had a good faith, reasonable belief that their actions were lawful. *Hill,* 45 F.3d at 663.

■ Defendants maintain that (1) their conduct did not violate a clearly established right, and (2) it was objectively reasonable for them to believe that their conduct did not violate any clearly established right.

The right to speak out on political and social issues is a clearly established, fundamental constitutional right. *See, e.g. Organization for a Better Austin,* 402 U.S. at 418, 91 S.Ct. at 1576–77; *Cohen,* 403 U.S. at 24, 91 S.Ct. at 1787–88. As for whether it was objectively reasonable for defendants to believe that the TRO did not violate this right, defendants claim that, because they were simply acting in accordance with FERPA to protect against disclosure of the students' names, their actions were reasonable. Defendants assert that one of Falinski's panel members, as well as her attorney, attended an October 5, 1993 meeting at Mazza's home, thereby suggesting that Mazza and Porr were planning to reveal the names. Mazza and Porr, however, vigorously dispute the presence of either individual at that meeting.

Given the broad wording of the TRO, and the fact that plaintiffs dispute that defendants had any reasonable basis in fact to believe that disclosure of the names was imminent, we find summary judgment inappropriate. We believe that a reasonable jury could find that the TRO adversely impacted upon plaintiffs' First Amendment rights, and that defendants' belief in the lawfulness of their actions was unreasonable.

In sum, we dismiss plaintiffs' claims against defendants in their official capacities. We reject defendants' individual immunity argument, either absolute or qualified. Accordingly, defendants' motion for summary judgment on plaintiffs' § 1983 claim against defendants in their individual capacities is denied.

## C. F.R.C.P. 12(b)(6) STANDARD

A complaint must be dismissed under Fed. R.Civ.P. 12(b)(6) only if "it appears beyond a reasonable doubt that the plaintiff can prove

---

**2.** This holding is not inconsistent with the holding of the Court of Appeals in *Spear.* In that case, the Court afforded absolute prosecutorial immunity not to school officials, but to two high-ranking town executive officers: the corporation counsel to the town and the police chief. *Spear,* 954 F.2d at 66.

no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see also Easton v. Sundram,* 947 F.2d 1011, 1014 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). In addition, in deciding a motion to dismiss, the Court must read the facts alleged in the complaint "generously" drawing all reasonable inferences in favor of the party opposing the motion. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989). The trial court's role is to appraise the legal merits of the complaint and not to weigh the evidence which might be introduced at trial. *See Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991) (plaintiff is not compelled to prove her case at the pleading stage). The issue "is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Finally, the trial court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley,* 355 U.S. at 45–46).

### 1. Malicious Prosecution

■ Plaintiffs claim that defendants' initiation and continuation of the proceedings against them, in the absence of probable cause, constituted malicious prosecution. In order to sustain a claim for a malicious pros-

ecution of a civil action under New York law, a plaintiff must show (1) that defendants maliciously initiated a proceeding or action against plaintiff, (2) that the proceeding was terminated in favor of plaintiff, (3) that probable cause for the proceeding was lacking, and (4) that plaintiff's person or property was interfered with by the issuance of a provisional remedy. *O'Brien v. Alexander,* 898 F.Supp. 162, 165–166 (S.D.N.Y.1995); *Kenyon v. State,* 499 N.Y.S.2d 509, 510 (3d Dept.1986). A plaintiff satisfies the fourth element by showing interference in the form of "some incidental remedy, such as arrest, attachment, or injunction." *Kalso Systemet, Inc. v. Jacobs,* 474 F.Supp. 666, 670 (S.D.N.Y.1979) (citations omitted).

■ We find that plaintiffs here have sufficiently pled these four prima facie elements.[3] Their allegation of defendants' violation of their First Amendment rights satisfies the additional "interference" element of a malicious prosecution claim arising out of a civil action. We thus find that plaintiffs have made out a sufficient prima facie claim for malicious prosecution. Accordingly, defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss plaintiffs' malicious prosecution claim is denied.[4]

### 2. Defamation

■ Mazza and Porr also bring a defamation claim, based on an article published in the *North County News,* a Cortlandt newspaper, on December 8, 1993. The article attributes several potentially inflammatory

---

**3.** Defendants assert that the TRO was not a "criminal proceeding" for the purposes of a malicious prosecution action. However, New York courts have extended the tort to cover civil actions. *See O'Brien,* 898 F.Supp. at 165–166; *Kalso Systemet, Inc.,* 474 F.Supp. at 670. Moreover, New York courts have repeatedly considered claims for malicious prosecution arising out of improperly obtained temporary restraining orders. *See Hornstein v. Wolf,* 67 N.Y.2d 721, 499 N.Y.S.2d 938, 490 N.E.2d 857, 858 (Ct.App.1986) (holding that malicious prosecution claim was defective because plaintiff failed to rebut presumption of probable cause created by TRO); *RS Paralegal & Recovery Services, Inc. v. Poughkeepsie Savings Bank F.S.B.,* 190 A.D.2d 660, 593 N.Y.S.2d 283 (2d Dept.1993) (holding that, absent an undertaking, only remedy for party dam-

aged by improperly issued TRO could come from showing of malicious prosecution); *Doran & Associates, Inc. v. Envirogas, Inc.,* 112 A.D.2d 766, 492 N.Y.S.2d 504, 506 (4th Dept.1985) ("Absent a showing of plaintiff's bad faith under circumstances amounting to malicious prosecution, damages resulting from an improperly issued temporary restraining order are limited to the amount of the undertaking required to be filed.").

**4.** We exercise our authority to hear the malicious prosecution claim pursuant to *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), as it arises out of a common nucleus of operative fact as plaintiffs' § 1983 claim.

quotes about plaintiffs to defendant Walker.[5] To establish a prima facie case of defamation under New York law, a plaintiff must demonstrate the existence of (1) defamatory statement of fact, (2) of and concerning plaintiff, (3) published to a third party by defendant, (4) with resulting injury to plaintiff. *Weldy v. Piedmont Airlines*, 985 F.2d 57, 61 (2d Cir.1993); *Robinson v. Town of Colonie*, 878 F.Supp. 387, 408 (N.D.N.Y.1995).

■■■ Defendants do not dispute that Mazza and Porr have sufficiently pled all four elements of a defamation claim. They simply assert that defamation is not a cognizable tort under 42 U.S.C. § 1983. However, we find that it is a supplemental state claim arising out of the same nucleus of operative fact as the § 1983 claim.[6] Defendants' motion to dismiss the defamation claim under Fed.R.Civ.P. 12(b)(6) is therefore denied.

### CONCLUSION

For the foregoing reasons, the § 1983 claim against defendants in their official capacities is dismissed. Defendants' motion for summary judgment on the § 1983 claims brought against defendants in their individual capacities is denied. Defendants' motion

5. The article quotes Walker as stating that Mazza and Porr were being "used as tools to try this case in public," and that Porr and Mazza were liable to "more widely distribute the charges, harass them," if left unchecked. The article also quotes Walker as wondering "who would have known that [plaintiffs] would use [the charges] as irresponsibly as they did?"

6. A federal court has subject matter jurisdiction over pendant state claims if they arise out of the same nucleus of operative fact as a plaintiff's federal claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Federal courts have varied widely on their decisions to hear pendant state defamation claims. *See generally Douglas v. American Cyanamid Co.*, 472 F.Supp. 298, 304 (D.Conn.1979). Some courts have refused to exercise supplemental jurisdiction under circumstances similar to the case at bar. *See, e.g., Spencer v. Banco Real, S.A.*, 623 F.Supp. 1008, 1012 (S.D.N.Y.1985) (holding that state law defamation claim failed to derive from common nucleus of operative fact as Title VII claim); *Hester v. Rizzo*, 454 F.Supp. 537, 548 (E.D.La.1978) (state libel claim did not derive from common nucleus of operative fact as Equal Protection claim). However, other courts in similar situations have reached the opposite conclusion. *See,*

to dismiss the malicious prosecution and defamation claims is denied.

**SO ORDERED.**

<hr/>

*e.g. Nanavati v. Burdette Tomlin Memorial Hospital*, 857 F.2d 96, 105–106, *cert. denied*, 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989) (holding that because slander claims and federal antitrust claims arose out of same enmity between two parties, exercising supplemental jurisdiction over slander claims was proper); *Rodriguez v. Phillips*, 1994 WL 273370, *8 (S.D.N.Y.), *rev'd in part, dismissed in part*, 66 F.3d 470 (2d Cir.1995) (holding that state defamation claim shared common nucleus of operative fact with § 1983 claim); *National Organization for Women v. Sperry Rand Corp.*, 457 F.Supp. 1338, 1349 (D.Conn.1978) (state libel and slander claims shared common nucleus of operative fact with Title VII "retaliation" claim). We find that the facts of this case most resemble those of *Nanavati*, where the animosity between the two parties was similarly at issue in both the state and federal claims. Moreover, proof of the falsity or veracity of Walker's statements would be relevant to determining defendants' motives in obtaining the TRO, and to assessing the reasonableness of their belief that the TRO would not violate Mazza and Porr's clearly established First Amendment rights. As such, we choose to hear the defamation claim with the § 1983 claim.