Anthony JACKSON and Eva Jackson, Plaintiffs,

v.

PEEKSKILL CITY SCHOOL DISTRICT, Board of Education for the Peekskill City School District, Douglas Glickert, Individually and as President of Board, Colin Smith, Individually and as Vice President of Board, Lisa Aspinall–Kellawon, Individually and as Member of Board, Jillian Clausen, Individually and as Member of Board, Maria Pereira, Individually and as Member of Board, Michael Simpkins, Individually and as Member of Board, Richard Sullivan, Individually and as Member of Board, James Tosto, Dawn Tosto, Superintendent James Willis, in his Individual and Official Capacities, and Superintendent Louis Licopoli, in his Individual and Official Capacities, Defendants.

No. 14 CV 4774(VB).

United States District Court, S.D. New York.

Signed May 1, 2015.

Mary Elizabeth Brady Marzolla, Feerick Lynch MacCartney, South Nyack, NY, for Plaintiffs.

Lewis R. Silverman, Caroline Beth Lineen, Silverman and Associates, White Plains, NY, Catherine Ann Brennan, Michael Kevin Kelly, Fumoso, Kelly, Deverna, Snyder, Swart & Farrel, Happauge, NY, for Defendants.

## MEMORANDUM DECISION

BRICCETTI, District Judge:

Plaintiffs Anthony and Eva Jackson bring claims pursuant to Section 1983 and New York Public Health Law § 2504, alleging defendants Peekskill City School District (the "District"); Board of Education for the Peekskill City School District (the "Board"); Board members Douglas Glickert, Colin Smith, Lisa Aspinall–Kellawon, Jillian Clausen, Maria Pereira, Michael Simpkins, and Richard Sullivan (collectively, the "Board Members"); James Tosto; James Willis; Lorenzo Licopoli (sued as Louis Licopoli) (together with the District, Board, and Board Members, the "School Defendants"); and Dawn Tosto unlawfully provided their minor daughter access to birth control pills. Mr. Jackson also alleges he was retaliated against for filing this lawsuit, in violation of the First Amendment.

Now pending are the School Defendants' and Dawn Tosto's motions to dismiss the Second Amended Complaint ("SAC"). (Docs. ## 12, 16, 33, 36).

For the following reasons, the motions are GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

### BACKGROUND

For purposes of ruling on this motion, the Court accepts as true all well-pleaded factual allegations in the SAC and draws all reasonable inferences in plaintiffs' favor.

Plaintiffs are the parents of a minor child (hereinafter, "Jane Doe") who attended District schools. Mr. Jackson was employed as a tenured teacher in the District during the relevant time period. James Tosto is a "school counselor and/or psychologist" employed by the District, and his wife, Dawn Tosto, is employed by the

Hudson River Community Health Clinic (the "Health Clinic"). (SAC ¶¶ 12, 13). Plaintiffs allege Mrs. Tosto was "permitted upon the [ ] District premises with access to students, including [Jane Doe]." (*Id.* ¶ 13).

The SAC alleges the Tostos conspired to transport Jane Doe secretly from school to the Health Clinic in and around June 2011 for the purpose of assisting her in obtaining birth control. Plaintiffs allege Mr. Tosto removed Jane Doe from her fourth period class, then escorted her out the back entrance of the school to avoid detection at the main entrance. Plaintiffs also allege Mrs. Tosto drove Jane Doe to the Health Clinic. According to plaintiffs, Jane Doe was physically examined and prescribed birth control pills while at the Health Clinic, and Mrs. Tosto arranged for a co-worker to transport Jane Doe secretly back to school. Plaintiffs allege Jane Doe was transported to and from the Health Clinic and provided health services without their knowledge or consent.

Plaintiffs allege Jane Doe proceeded to take the contraception until plaintiffs discovered the birth control pills.

On June 14, 2011, plaintiffs met with Superintendent Licopoli to discuss the events of June 2011, and allege the District and Licopoli failed to take any action in response to their allegations. Plaintiffs allege Licopoli, and his successor, Superintendent Willis, continued to do nothing in spite of plaintiffs' allegations, and tacitly approved of the Tostos' conduct by allowing Mr. Tosto continued access to the District's students and facilities.

Plaintiffs commenced this action in Supreme Court, Westchester County, on May 30, 2014. Plaintiffs allege the District, the Board, the Board Members, and Superintendent Licopoli made a statement regarding the lawsuit on June 5, 2014, in which they unnecessarily asserted Mr. Jackson had "been reassigned to home since January 2014 due to a pending disciplinary matter." (SAC Ex. B).

Defendants removed the action to this Court on June 27, 2014, and plaintiffs now allege (i) the Tostos, Superintendent Willis, the District, and the Board were deliberately indifferent to their constitutional right to educate Jane Doe in accord with their own views, in violation of the Fourteenth Amendment's guarantee of substantive due process; (ii) the Tostos acted in concert to deprive plaintiffs of that Fourteenth Amendment right; (iii) Superintendent Licopoli, the District, the Board, and the Board Members retaliated against Mr. Jackson in contravention of the First Amendment; and (iv) the Tostos and the District violated Public Health Law § 2504, which requires parental consent for the administration of medical, dental, health, and hospital services to a child.

## DISCUSSION

### I. *Legal Standard*

 In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" announced by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678, 129 S.Ct. 1937; *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Ashcroft v. Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

■ To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility." *Id.* at 678, 129 S.Ct. 1937; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## II. *Substantive Due Process Claim*

### A. *The Tostos and Superintendent Willis*

■ Plaintiffs allege the Tostos and Superintendent Willis callously disregarded their right to rear and educate Jane Doe in accordance with their own views, in violation of the Fourteenth Amendment.

■ "Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against a government action that is incorrect or ill advised." *Kaluczky v. City of White Plains,* 57 F.3d 202, 211 (2d Cir. 1995) (internal quotation marks omitted). To succeed on their substantive due process claim, plaintiffs must show (i) they had a valid liberty or property interest, and (ii) defendants infringed on that interest in an arbitrary or irrational manner. *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 503 (2d Cir.2001); *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999) ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'").

As to the first element of plaintiffs' substantive due process claim, the parental interest "in the care, custody, and control of their children" is "perhaps the oldest of the fundamental liberty interests recognized." *Troxel v. Granville,* 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *see also Pierce v. Soc'y of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925) (recognizing "liberty of parents and guardians to direct the upbringing and education of children under their control").

While the first element of plaintiffs' claim is plainly present, plaintiffs must also show the Tostos and Superintendent Willis infringed upon their interest in an arbitrary manner.

"The Supreme Court has barred a number of state actions, concluding those actions interfere with a parent's fundamental right to make decisions about the care, custody, and control of their children." *Reardon v. Midland Cmty. Schs.,* 814 F.Supp.2d 754, 768–69 (E.D.Mich.2011) (collecting cases). However, when the Supreme Court has addressed a parent's right to rear his or her child, the State was either requiring or prohibiting some activity. *See Doe v. Irwin,* 615 F.2d 1162, 1168 (6th Cir.1980) (summarizing cases). Here, plaintiffs have not alleged the Tostos or Superintendent Willis required Jane Doe to submit to the examination and take contraception. Accordingly, this Court must look beyond Supreme Court precedent to determine whether the Tostos and Superintendent Willis acted arbitrarily and irrationally.

Plaintiffs principally rely on *Alfonso v. Fernandez,* 195 A.D.2d 46, 606 N.Y.S.2d 259 (2d Dep't 1993). There, a high school made condoms available to inquiring students pursuant to a Department of Education regulation. A group of parents brought suit, alleging the program violated their right to raise their children as they

saw fit. The court agreed, finding the program forced the parents "to surrender their right to influence and guide the sexual activity of their children without State inference." *Id.* at 67, 606 N.Y.S.2d 259. Because school attendance was compulsory, and at school, the children would have unrestricted access to free contraceptives, the court found the program intruded into the parents' purview.

Defendants argue *Alfonso* is distinguishable because while Jane Doe was required to attend school, as the students were required in *Alfonso*, there is no allegation she was coerced into traveling to the Health Clinic, submitting to the physical examination, or taking the contraception. However, the students were not coerced into accepting condoms in *Alfonso*. Rather, the program called for a health resources room where condoms would be dispensed to students who requested them. Despite this fact, the court still found a violation of the parents' right to raise their children because the school went beyond mere exposure to an idea or point of view, and instead offered "the means for students to engage in sexual activity at a lower risk of pregnancy and contracting sexually transmitted diseases." *Id.* at 57, 606 N.Y.S.2d 259.

Plaintiffs also rely on *Arnold v. Board of Education of Escambia County, Alabama*, 880 F.2d 305 (11th Cir.1989), *abrogated in part by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). There, a minor student discovered she was pregnant and sought guidance from her school's counselors. The counselors allegedly procured a pregnancy test for the pregnant minor, coerced her and the minor father of the unborn child to agree to abort the child, coerced the minors into keeping the abortion a secret, and paid them to perform menial tasks at the school to finance the abortion. The

court held "a parent's constitutional right to direct the upbringing of a minor is violated when the minor is coerced to refrain from discussing with the parent an intimate decision such as whether to obtain an abortion; a decision which touches fundamental values and religious beliefs parents wish to instill in their children." *Id.* at 312.

Defendants argue, and the Court agrees, *Arnold* is distinguishable from the instant action. The counselors' alleged actions in *Arnold* were plainly coercive. Defendants' alleged actions do not go anywhere near as far, especially as the SAC contains no allegation of coercion.

Defendants argue the instant action is most similar to *Anspach v. City of Philadelphia, Department of Public Health*, 503 F.3d 256 (3d Cir.2007). There, the City's Health Center provided the "morning after pill" to the plaintiffs' daughter, without the plaintiffs' consent or knowledge. The court reasoned the Health Center's actions were not "tantamount to state coercion" because the plaintiffs' daughter voluntarily took the medication and employees at the Health Center did not prevent her from calling her parents before she took it. *Id.* at 264. The court found the state actors were under no duty to assist the plaintiffs as parents or to "affirmatively *foster* the parent/child relationship," and as such, their "passive failure" could not "form the basis of a constitutional claim." *Id.* at 266, 269.

While *Anspach* is similar to the facts here in many respects, it differs in one key regard—the plaintiffs' daughter in *Anspach* voluntarily visited the clinic and requested the emergency contraception. Here, plaintiffs have made no such allegation. Instead, they allege the Tostos transported Jane Doe off campus, without the school's permission, during school hours.

As discussed above, plaintiffs do not allege defendants exerted coercive pressure on Jane Doe to submit to the examination or hide her prescription from her parents. *See id.* at 266 (no recognition of fundamental right to bring up children when "there is no manipulative, coercive, or restraining conduct by the State."). However, plaintiffs do allege the Tostos did more than simply counsel Jane Doe. *See Reardon v. Midland Cmty. Schs.,* 814 F.Supp.2d at 768 ("Nothing in the Constitution prohibits school teachers or counselors from counseling students."). Plaintiffs allege the Tostos arranged for Jane Doe's transportation to and from the Health Clinic and failed to notify the school she would be leaving for off-campus health services. This is neither the passive failure of *Anspach,* nor the plain coercion of *Arnold.*

"Courts have recognized the parental liberty interest only where the behavior of the state actor compelled interference in the parent-child relationship." *Anspach v. City of Philadelphia Dep't of Pub. Health,* 503 F.3d at 261. Plaintiffs allege the Tostos compelled interference in their relationship with Jane Doe when the Tostos allegedly drove her to an off-campus site, withheld this information from the school, and arranged for her transportation back to school. This alleged action, which goes far beyond mere counseling or exposure to an idea, provided Jane Doe the means to access birth control. Further, Jane Doe was obliged to be at school—and while plaintiffs believed she was receiving instruction in her fourth period class, she was allegedly aided in accessing healthcare services. Although it is a close call, plaintiffs have, at this stage, sufficiently alleged the Tostos arbitrarily and irrationally deprived plaintiffs of their right to raise their daughter as they chose.[1]

However, plaintiffs' claim against Superintendent Willis fails. The SAC contains no allegation he interfered with plaintiffs' right to raise their daughter as they chose. Plaintiffs allege Superintendent Willis tacitly approved of the Tostos' conduct by declining to take action against it. However, Superintendent Willis's after-the-fact inaction did not result in a constitutional injury—the alleged injury occurred when the Tostos allegedly arranged for Jane Doe to leave school for health services. For this reason, this claim cannot proceed against him.

### B. *Qualified Immunity*

■ Defendants argue that if the Court finds a substantive due process violation has been sufficiently alleged, as it has, the Tostos are immune.

The Court agrees.

■ Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Tierney v. Davidson,* 133 F.3d 189, 196 (2d Cir.1998) (internal quotation marks omitted).

While the right to guide one's child intellectually and religiously was clearly estab-

---

1. To be clear, the Court does not base its ruling on the Tostos' failure to notify plaintiffs about Jane Doe's exercise of her reproductive rights.

lished in June 2011, the contours of a violation of that right remain undefined. While it is undoubtedly a violation to coerce a student's reproductive choice, and it is undoubtedly not a violation to provide guidance to a student, the Tostos' actions fall somewhere in the middle. If it was a close call for this Court, it was objectively reasonable for the Tostos to believe their actions did not violate the Fourteenth Amendment. This is especially true in light of a minor's right to reproductive privacy. *See Anspach v. City of Philadelphia Dep't of Pub. Health,* 503 F.3d at 269; *Alfonso v. Fernandez,* 195 A.D.2d at 55, 606 N.Y.S.2d 259. As such, while plaintiffs may have adequately alleged a substantive due process violation, their claim must be dismissed as against the Tostos [2] because they are immune. *See Gruenke v. Seip,* 225 F.3d 290, 307 (3d Cir.2000) (defendant swim coach unconstitutionally interfered with familial relations when he purchased a pregnancy test for plaintiff's daughter, encouraged plaintiff's daughter to take it, and when she refused, pushed her teammates to convince her to take the test, but holding defendant was immune because "although the general principles were articulated by Supreme Court opinions, their application to the unique circumstances of the case cannot be said to have been clearly established."); *Reardon v. Midland Cmty. Schs.,* 814 F.Supp.2d at 768 (teacher and school counselor immune from the parent plaintiffs' substantive due process claim because plaintiffs could not demon-

strate the alleged violation of their right to parent was obvious).

C. *The District and the Board*

 Plaintiffs also bring their Fourteenth Amendment claim against the District and the Board.[3]

██ A municipality is liable for deprivation of a citizen's rights pursuant to Section 1983 when execution of the municipality's policy or custom inflicts the injury. *Monell v. N.Y. City Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *Monell's* policy or custom requirement is also satisfied "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani,* 506 F.3d 183, 192 (2d Cir.2007).

Plaintiffs do not allege a District custom, policy, or practice directly linked to the constitutional deprivation. However, plaintiffs argue Superintendent Willis, as a final decision-maker for the District, took no action against the Tostos, thereby condoning the conduct.

██ While there is precedent for holding a municipality liable for a single decision by an official with policymaking authority in appropriate circumstances, *see Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), all the cases to which plaintiffs cite

---

2. Mrs. Tosto also argues plaintiffs' Fourteenth Amendment claim should be dismissed against her because she is not a state actor. The Court makes no ruling as to Mrs. Tosto's status as a state actor because, even if she were, she is immune from plaintiffs' constitutional claim.

3. Claims against the Board and the Board Members in their official capacities are not subject to a suit for damages pursuant to

Section 1983. *See Mazza v. Hendrick Hudson Cent. Sch. Dist.,* 942 F.Supp. 187, 192 (S.D.N.Y.1996) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). Moreover, plaintiffs have not alleged any wrongdoing on behalf of the Board Members in their individual capacities. As such, plaintiffs' substantive due process claim against the Board and the Board Members must be dismissed.

involved affirmative action by the policy-maker. That is because there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Here, if Superintendent Willis's single decision to do nothing created the District's custom or policy, there is no link between that inaction and the alleged constitutional deprivation—because his inaction occurred *after* plaintiffs were deprived of their right to raise their daughter as they chose. To put it another way, plaintiffs must allege Superintendent Willis's single decision to do nothing caused the events of June 2011, and plaintiffs make no such allegation.

Even considering plaintiffs' *Monell* claim as one for deliberate indifference, plaintiffs have not alleged the District was aware of and deliberately indifferent to a pattern of misconduct so permanent and widespread it implies the District tacitly organized it. *See Reynolds v. Giuliani,* 506 F.3d at 192.

Therefore, plaintiffs have failed to state a claim against the District, and their substantive due process claim may not proceed against it.

### III. *Conspiracy*

Plaintiffs allege Mr. Tosto acted in concert with Mrs. Tosto to deprive plaintiffs of their Fourteenth Amendment rights.

The SAC is replete with allegations of the Tostos' alleged agreement to arrange for Jane Doe's transportation off-campus for administration of health services. However, as discussed above, it was reasonable for the Tostos to believe their alleged agreement did not inflict an unconstitutional injury. As they are immune from plaintiffs' substantive due process claim, they are immune from plaintiffs' Section 1983 conspiracy claim.

### IV. *First Amendment Retaliation*

#### A. *Superintendent Licopoli*

■ Anthony Jackson alleges Superintendent Licopoli[4] retaliated against him when he issued a June 5, 2014, statement claiming Mr. Jackson was "reassigned to home since January 2014 due to a pending disciplinary matter." (SAC Ex. B). Mr. Jackson argues the statement violated his right to confidentiality of a pending disciplinary proceeding under New York Education Law § 3020–a, and thus, constitutes unconstitutional retaliation.

■ To state a First Amendment retaliation claim as a public employee, plaintiff must plausibly allege (i) his speech was constitutionally protected; (ii) he suffered an adverse employment action; and (iii) the protected speech caused the subsequent adverse employment action. *Hoyt v. Andreucci,* 433 F.3d 320, 327 (2d Cir. 2006); *see also Winters v. Meyer,* 442 F.Supp.2d 82, 86–87 (S.D.N.Y.2006).

While Mr. Jackson constitutionally exercised his First Amendment rights when he filed the instant action in Supreme Court, Westchester County, on May 30, 2014, he has not sufficiently alleged he suffered an adverse employment action as a result.

■ An adverse employment action in the context of First Amendment retaliation is conduct that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d 217, 225 (2d Cir.2006) (internal quotation marks omitted). "[W]hether an undesirable employment action qualifies as

---

4. Mr. Jackson also brings this claim against the Board Members, but as already detailed *supra,* all claims against the Board Members in their official and individual capacities may not proceed.

**430**

being 'adverse' is a heavily fact-specific, contextual determination," *Hoyt v. Andreucci,* 433 F.3d at 328, and "[a] plaintiff cannot support such a determination unless he can show that an alleged act of retaliation is more than de minimis." *Zelnik v. Fashion Inst. of Tech.,* 464 F.3d at 226. Adverse employment action includes "harsh measures, such as discharge, refusal to hire, refusal to promote, reduction in pay, and reprimand," as well as "lesser sanctions, such as failure to process a teacher's insurance form, demotion, reassignment to a place that aggravated physical disabilities, and express accusations of lying." *Wrobel v. Cnty. of Erie,* 692 F.3d 22, 31 (2d Cir.2012).

The June 5, 2014, statement would not deter an individual of ordinary firmness from continuing to pursue the instant action. Indeed, the alleged retaliation is precisely the de minimis sort not suitable for a First Amendment claim. *See Zelnik v. Fashion Inst. of Tech.,* 464 F.3d at 226 (" 'It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.' " (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982))). If Mr. Jackson believed his rights were violated under Education Law § 3020–a, he should have included such a claim in the SAC. He did not. Alleging Superintendent Licopoli violated Section 3020–a in retaliation for Mr. Jackson bringing suit does not transform that alleged wrongdoing into an adverse employment action. Mr. Jackson's claim for First Amendment retaliation against Superintendent Licopoli is therefore dismissed.

### B. *Defendants the District and the Board*

Mr. Jackson also brings his First Amendment retaliation claim against the District.[5]

As discussed above, Mr. Jackson does not state the requisite underlying First Amendment violation by Superintendent Licopoli. *See Henry–Lee v. City of N.Y.,* 746 F.Supp.2d 546, 567 (S.D.N.Y.2010). For that reason, his *Monell* claim against the District for retaliation may not proceed.

### V. *Public Health Law § 2504 Claim*

Having dismissed plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(c).

### CONCLUSION

Defendants' motions to dismiss are GRANTED.

The Clerk is instructed to terminate the motions (Docs. ## 12, 16, 33, 36), and close this case.

SO ORDERED.

---

**5.** Mr. Jackson also brings this claim against the Board, but as already detailed *supra,* all claims against the Board may not proceed.