954 F.2d 63
 RICO Bus.Disp.Guide 7921
 John M. SPEAR; Spear Printing Co., Inc., Plaintiffs-Appellants,
v.
TOWN OF WEST HARTFORD; Marjorie S. Wilder, Esq.,
Corporation Counsel in her official and individual capacity;
Robert R. McCue, Chief of Police in his official and
individual capacity as Chief of Police and acting Town
Manager; Summit Women's Center West, Inc., Defendants-Appellees.
 Nos. 290, 291, Dockets 91-7509, 91-7511.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 7, 1991.
Decided Jan. 13, 1992.
 
 George J. Mercer, Milford, Conn. (Joseph P. Secola, The Rutherford Institute of Connecticut, of counsel), for plaintiff-appellant John M. Spear.
 Vincent P. McCarthy, New Milford, Conn., for plaintiff-appellant Spear Printing Co., Inc.
 David Thomas Ryan, Hartford, Conn. (Charles D. Gill, Jr., William A. Collier, Robinson & Cole, Scott M. Karsten, Sack, Spector & Barrett, West Hartford, Conn. of counsel), for defendants-appellees Town of West Hartford, Marjorie S. Wilder, and Robert R. McCue.
 Jon L. Schoenhorn, Hartford, Conn. (Hurvitz, Hershinson & Schoenhorn, James J. Szerejko, Halloran & Sage, of counsel), for defendant-appellee Summit Women's Center West, Inc.
 A. Lawrence Washburn, Jr., New York City, for amicus curiae Legal Center for Defense of Life.
 Before OAKES, Chief Judge, VAN GRAAFEILAND and NEWMAN, Circuit Judges.
 OAKES, Chief Judge:
 
 
 1
 John M. Spear and the Spear Printing Company, Inc. (collectively "Spear") appeal from a judgment of the United States District Court for the District of Connecticut, Alan H. Nevas, Judge, dismissing their action against the Town of West Hartford, its Corporation Counsel, its acting Town Manager, and Summit Women's Center West ("Summit"). 771 F.Supp. 521. On this appeal, Spear argues that the individual defendants are not absolutely immune, that his complaint stated a cause of action under 42 U.S.C. § 1983 (1988), and that Summit acted under color of state law. For the reasons set forth below, we affirm.
 
 BACKGROUND
 
 2
 On April 1, 1989, Operation Rescue staged an anti-abortion protest at Summit, a women's health care facility in West Hartford. Catherine Jersey, an employee of the Spear Printing Company, which publishes the weekly Orange County Post, participated in the protest. On April 4, 1989, an editorial written by John M. Spear entitled "Northern Rednecks" appeared in the Orange County Post, criticizing the West Hartford Police Department's efforts to disband the demonstration.
 
 
 3
 The West Hartford Town Council passed a resolution in June 1989 authorizing Corporation Counsel Marjorie Wilder to take legal action to prevent such protests in West Hartford. West Hartford brought suit in federal court to prohibit illegal protest activities. The suit, authorized by Wilder and acting Town Manager and Police Chief Robert McCue, named Spear among other defendants, and asserted RICO and nuisance claims alleging that the defendants had conspired to interfere with civil rights. According to Spear's complaint in the present action, publication of the editorial constituted the sole basis of the town's complaint against Spear.[1]
 
 
 4
 Judge Dorsey issued a temporary restraining order in June 1989. It enjoined all the defendants, including Spear, from various protest activities, but explicitly purported not "to infringe upon any rights under the First Amendment which can properly be exercised without infringing upon the rights intended to be protected hereby."[2] Summit intervened in September 1989, also naming Spear as defendant. On December 6, 1989, the town and Summit filed a joint amended complaint, dropping all claims against Spear.
 
 
 5
 Spear, in turn, sued the town, Wilder, McCue and Summit under 42 U.S.C. § 1983 (1988). Spear alleged that the RICO suit violated his First Amendment rights, causing "fear, mental anguish and worry over any potential legal liability ..., thereby causing a chilling effect," and that the town and Summit acted in concert to violate Spear's constitutional rights. Defendants moved to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Wilder and McCue sought absolute immunity; the town argued that the complaint failed to state a cause of action under section 1983; and Summit contended that, as a private organization, it was not acting under color of state law. The district court agreed with all of defendants' arguments and accordingly dismissed the complaint. This appeal followed.
 
 DISCUSSION
 
 6
 Spear presses three issues on appeal. First, he argues that the individual defendants Wilder and McCue were not absolutely immune from liability. Second, he contends that he stated a valid section 1983 cause of action for violation of his First Amendment and due process rights and for malicious prosecution. Finally, he claims that Summit acted in concert with the town and can therefore be held liable as a state actor. For the reasons set forth below, we reject all of these claims.
 
 1. Wilder and McCue
 
 7
 The district court accorded Wilder and McCue absolute immunity from personal liability under section 1983. We agree. The damage claims against them were based on their authorization of the lawsuit against Spear. Wilder and McCue acted in their official capacities as Corporation Counsel and acting Town Manager, respectively.
 
 
 8
 Absolute immunity, because it detracts from section 1983's broadly remedial purpose, see Scheuer v. Rhodes, 416 U.S. 232, 243, 94 S.Ct. 1683, 1689-90, 40 L.Ed.2d 90 (1974), applies only to a limited class of officials and functions. Hafer v. Melo, --- U.S. ----, 112 S.Ct. 358, 363-64, 116 L.Ed.2d 301 (1991); Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). It does, however, protect officials from personal liability for the performance of certain discretionary acts. Such immunity extends to prosecutors, Imbler v. Pachtman, 424 U.S. 409, 430-31, 96 S.Ct. 984, 994-96, 47 L.Ed.2d 128 (1976); to executive officers initiating administrative proceedings, Butz v. Economou, 438 U.S. 478, 515-17, 98 S.Ct. 2894, 2915-16, 57 L.Ed.2d 895 (1978); to government attorneys defending civil suits, Barrett v. United States, 798 F.2d 565, 572 (2d Cir.1986); and to government attorneys who initiate civil suits, Augustyniak v. Koch, 588 F.Supp. 793, 797 (S.D.N.Y.), aff'd, 794 F.2d 676 (2d Cir.1984), cert. denied, 474 U.S. 840, 106 S.Ct. 123, 88 L.Ed.2d 101 (1985). Under this line of immunity case law, Wilder and McCue may not be held liable for authorizing the lawsuit against Spear.
 
 
 9
 The Supreme Court, in extending prosecutorial immunity to the executive branch, explained that
 
 
 10
 agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.... The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete.
 
 
 11
 Butz, 438 U.S. at 515, 98 S.Ct. at 2915. The reasoning of Butz applies not only to federal agency officials, but also to local executive officers. See, e.g., Aitchison v. Raffiani, 708 F.2d 96, 99 (3d Cir.1983); Reed v. Village of Shorewood, 704 F.2d 943, 951-52 (7th Cir.1983). Moreover, that reasoning applies to the initiation of civil lawsuits as well as to administrative proceedings. See, e.g., AGI-Bluff Manor, Inc. v. Reagen, 713 F.Supp. 1535, 1544-45 (W.D.Mo.1989). Thus, when a high executive officer of a municipality authorizes a civil lawsuit in pursuit of that municipality's governmental interests, absolute immunity attaches.
 
 
 12
 Were McCue, who was not only acting Town Manager but also Police Chief, involved in this matter as a complaining witness rather than as an executive officer authorizing suit, he would not receive absolute immunity. White v. Frank, 855 F.2d 956, 961 (2d Cir.1988). The facts, however, suggest that McCue authorized the suit against Spear in his role as acting Town Manager. Spear's complaint targeted McCue's authorization of the suit, alleging that "McCue authorized the filing of the said lawsuit," and pointing out that McCue "was Acting Town Manager at the time that the Complaint was signed."
 
 
 13
 Spear contends that Burns v. Reed, --- U.S. ----, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), forecloses absolute immunity for Wilder and McCue. In Burns, the Supreme Court held that prosecutors do not enjoy absolute immunity for giving legal advice to police. 111 S.Ct. at 1944-45. The case turned on the distinction between offering advice and initiating litigation, and thus cannot be taken to reject absolute immunity for decisions to institute legal proceedings on behalf of the government. While Burns commends a historical focus in determining whether absolute immunity extends to particular official functions, 111 S.Ct. at 1942-43, it does not support Spear's patently implausible argument that absolute immunity cannot extend to the authorization and initiation of civil RICO litigation because, prior to the existence of the RICO statute, no such immunity existed.
 
 2. Town of West Hartford
 
 14
 a. First Amendment.
 
 
 15
 Spear's complaint alleged that by filing the lawsuit on the basis of the editorial and by obtaining an injunction, West Hartford chilled Spear's exercise of First Amendment rights. The district court nevertheless held that Spear failed to state a cause of action under section 1983 for deprivation of First Amendment rights. Relying on Laird v. Tatum, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), the district court explained that a "plaintiff must make specific allegations of fact that indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient."
 
 
 16
 In Laird, plaintiffs challenged an Army Intelligence data-gathering system, claiming that it chilled their First Amendment rights. The Supreme Court held that no justiciable controversy existed, because the plaintiffs' allegations of a chilling effect were based on the "mere existence" of the data-gathering system. 408 U.S. at 10, 15, 92 S.Ct. at 2324, 2326-27. Spear attempts to distinguish Laird from the present case by pointing out that his allegation of a chilling effect comes not from the "mere existence" of a policy, but from the town's direct action in launching a lawsuit and obtaining an injunction against him.
 
 
 17
 We are not persuaded by Spear's argument. Neither the preliminary injunction nor the temporary restraining order that preceded it chilled Spear's freedom of expression. The preliminary injunction did not apply to Spear. The temporary restraining order was directed to all the defendants in the RICO action, including Spear. That order, however, explicitly avoided infringing on First Amendment rights.
 
 
 18
 Spear argues further that the very filing of the lawsuit chilled his First Amendment rights. Spear's allegation of a chill, however, was conclusory and speculative. The complaint offered nothing beyond a bare assertion that the lawsuit "caus[ed] a chilling effect upon his First Amendment rights of the press and speech." Spear did not allege that he had declined to write further anti-abortion editorials, nor did he claim that he had toned down his writing on the subject. He did not allege that he had changed even one word of his writing. Given that the temporary restraining order explicitly excluded First Amendment infringement, Spear's naked assertion of a chill does not suffice to defeat a Rule 12(b)(6) motion.
 
 
 19
 We do not consider this result irreconcilable with our decision in Davis v. Village Park II Realty Co., 578 F.2d 461 (2d Cir.1978), where we reversed the dismissal of a civil rights action in which a plaintiff alleged a First Amendment chill. The plaintiff in that case alleged that the defendants' attempt to terminate her lease because of her leadership in tenants' association activities "was designed to chill her First Amendment rights and that it in fact had that effect." Id. at 463. Observing that "[Laird ] did not hold that chilling effect is not legally cognizable; rather, it held that the chilling effect alleged in that case was so remote and speculative that there was no justiciable case or controversy," we held that Davis's allegations sufficed to withstand a motion to dismiss. Id. We cannot equate Davis's predicament, in which she was threatened with eviction for her tenants' association activities, with Spear's, in which he was faced with a temporary restraining order that expressly excluded First Amendment infringement. In sum, we cannot conclude from Spear's complaint that the town's lawsuit inhibited him in the exercise of his First Amendment freedoms.
 
 
 20
 This is not to say we condone the town's action in naming a newspaper editor and publisher as defendants based on an editorial criticizing the town's police department. Our holding follows only from Spear's failure to allege any non-speculative chilling effect, and thus his failure to allege any impairment of his rights under the First Amendment.
 
 
 21
 b. Due Process.
 
 
 22
 Government conduct may be actionable under section 1983 as a substantive due process violation if it "shocks the conscience." Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952); see also Baker v. McCollan, 443 U.S. 137, 147, 99 S.Ct. 2689, 2696, 61 L.Ed.2d 433 (1979) (Blackmun, J., concurring). The district court reasonably concluded that West Hartford's actions in meeting with Summit and suing Spear fell short of that standard. The meeting between the attorneys of the town and Summit, contrary to Spear's allegation, did not concern a conspiracy to violate Spear's rights. Rather, the meeting was meant to provide the town with additional facts about the demonstration.
 
 
 23
 c. Malicious Prosecution.
 
 
 24
 Spear's section 1983 claim purportedly predicated on malicious prosecution was properly dismissed. As the district court explained, Spear was subject only to civil, not criminal, liability. Therefore, any abuse would have been malicious abuse of process rather than malicious prosecution. While section 1983 liability may be predicated on a claim for malicious prosecution, e.g., White v. Frank, 855 F.2d 956, 961 n. 5 (2d Cir.1988), it may not be predicated on a claim for malicious abuse of process. E.g., Havas v. Thornton, 609 F.2d 372, 376 (9th Cir.1979).
 
 3. Summit
 
 25
 Section 1983 addresses only those injuries caused by state actors or those acting under color of state law. Rendell-Baker v. Kohn, 457 U.S. 830, 835, 102 S.Ct. 2764, 2768, 73 L.Ed.2d 418 (1982). A private defendant may be held liable only as "a willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605-06, 26 L.Ed.2d 142 (1970) (quoting United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966)).
 
 
 26
 Spear alleged that Summit, a private entity, acted in concert with the town and its agents. That conclusory allegation does not suffice to state a section 1983 action against Summit. See Zemsky v. City of New York, 821 F.2d 148, 151-52 (2d Cir.), cert. denied, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987). To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act. "In final analysis the question is whether 'the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State.' " National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 199, 109 S.Ct. 454, 465, 102 L.Ed.2d 469 (1988) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982)); see also Conway v. Village of Mount Kisco, 750 F.2d 205, 214 n. 12 (2d Cir.1984) ("[P]rivate litigants engaged in a conspiracy with state officials to violate the Fourteenth Amendment are amenable to a cause of action under § 1983--whether as state actors by virtue of conspiratorial conduct with state officials, or as private actors who, acting in conspiratorial concert with state actors, thereby act under color of law."), reaff'd, 758 F.2d 46 (2d Cir.1985), cert. dismissed, 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed.2d 325 (1986). The only joint conduct alleged in the present case was a meeting between attorneys for West Hartford and for Summit. When the town and Summit later filed a joint complaint, Spear was not named as a defendant. Summit, in sum, did not act under color of law. Thus, the district court correctly dismissed Spear's claim against Summit.
 
 
 27
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 Paragraph 66 of West Hartford's complaint in its action against Spear stated:
 On or about Tuesday, April 4, 1989, the defendant Spear Printing Co., Inc., through its editor, the defendant John M. Spear, deliberately and maliciously published an incorrect, defamatory account of the April 1, 1989 protest based upon reports given to him by the defendant Catherine A. Jersey, another employee of the defendant Spear Printing Co., Inc., who was one of the protesters arrested by West Hartford police on April 1, 1989 at the Summit Women's Center, in furtherance of the efforts of the defendants and others to harass, intimidate and extort a less diligent or softened response from the West Hartford Police Department to future protest activities by the defendants and others at the Summit Women's Center and elsewhere within the Town of West Hartford.
 
 
 [2]
 Subsequently, the district court issued a preliminary injunction against the defendants, but the injunction did not order any relief against Spear. Town of West Hartford v. Operation Rescue, 726 F.Supp. 371 (D.Conn.1989). The Second Circuit vacated the injunction, holding that the RICO claim was too insubstantial to invoke the district court's subject matter jurisdiction. 915 F.2d 92, 100-04 (2d Cir.1990)