Thomas G. VERBEEK, Plaintiff,

v.

Conrad TELLER, individually, Vincent Toomey, individually, Robert Nordman, individually, Frederick Hager, individually, Neil Hanrahan, individually, Raymond Dean, individually, Mark Raynor, individually, Ora Bell Barnett, individually, Ann Scricca, individually, and the Incorporated Village of Westhampton Beach, New York, Defendants.

No. CV 99–0879.

United States District Court, E.D. New York.

Aug. 21, 2001.

Lovett & Gould by Jonathon Lovett, White Plains, NY, for Plaintiff.

Trager, Cronin & Byczek, LLP by Rocco G. Avallone, Lake Success, NY, for Defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Thomas G. Verbeek ("Verbeek") commenced this action against defendants Village of Westhampton Beach ("Village") and various Village officials, police officers, and counsel pursuant to 42 U.S.C. § 1983, alleging violations of his First Amendment rights to free speech, to freedom of association, and to petition the government for a redress of grievances; Fourth Amendment right to be free from unlawful search and seizure; and Fourteenth Amendment right to equal protection; he also purports to assert state supplemental claims. The individual defendants are Police Chief Conrad Teller ("Teller"); Police Officers Robert Nordman ("Nordman"), Frederick Hager ("Hager"), and Neil Hanrahan ("Hanrahan"); Police Officers and Village Trustees Raymond Dean ("Dean") and Mark Raynor ("Raynor"); Village Trustee Ora Bell Barnett ("Barnett"); and Village counsel Vincent Toomey ("Toomey") and Ann Scricca ("Scricca"). Presently before the Court is defendants' renewed motion to dismiss pursuant to Rules 12(b) and 12(h)(3) of the Federal Rules of Civil Procedure. For the reasons below, the motion is granted in part and denied in part.

### I. BACKGROUND

The allegations of the complaint, which are accepted as true for purposes of this motion, are as follows: Verbeek was employed as a police officer in the Village until his termination on November 23, 1998, following the second of two disciplinary proceedings brought against him by the Village. During his employment, and

prior to the first disciplinary proceeding, Verbeek complained about a variety of illegal and improper activities by various Village police officers and their relatives, some of whom Verbeek had arrested. These instances included the following: (1) in 1983, Verbeek arrested Nordman for driving while intoxicated and attempting to leave the scene of the accident; (2) in or about 1991, Verbeek arrested Police Officer James Kametler's ("Kametler") stepson for manslaughter; (3) in or about the summer of 1992, Verbeek reported to Teller a civilian complaint regarding Teller's daughter's sale and use of illicit drugs; (4) in or about August 1992, Verbeek reported to the so-called "East End Drug Task Force" his own observations of Teller's daughter's sale and use of illicit drugs; (5) in or about October 1993, Verbeek complained that Hager had committed an attempted rape, the circumstances of which were covered up by police officers, including Teller and Police Lieutenant David Doyle ("Doyle"). In addition, these instances included, *inter alia:* (1) Verbeek's "expression of concern" that Hanrahan was permitted, with impunity, to threaten to kill Police Detective Edwin Hamor; (2) Verbeek's "expression of concern" since April 1994 that Kametler was permitted, with impunity, to threaten to physically injure a Village resident; (3) Verbeek's "expression of concern" in July 1995, that Hager was permitted to escape punishment for stealing gasoline from the Village; and (4) Verbeek's "expression of concern" that Hanrahan was permitted, with impunity, to be absent without leave from his police duties on or about November 3, 1995. Complaint ¶ 20.

On or about February 21, 1996, as a result of Verbeek's "repeated expressions of concern regarding the [alleged] wrongdoing" by various police officers and their relatives, Teller had charges brought against Verbeek for leaving his patrol car for extended periods of time, a charge that constituted a "dereliction of ... duty." Complaint ¶ 16. Until then, Verbeek had a clear police record for over 11 years.

On March 21, 1996, a non-public hearing was commenced, but was then discontinued after a witness testified that one of the "principal charges against [Verbeek] was false." Complaint ¶ 17. The Village was permitted to amend the charges, and on March 26, 1996, further disciplinary charges were brought against Verbeek including, *inter alia*, leaving his patrol car without authority, interfering with a departmental investigation, and making false entry on a police department record.

A hearing was then commenced before Hearing Officer Robert Kearon ("H.O.Kearon"). During the hearing, Verbeek raised a "whistleblower" defense under New York State Civil Service Law § 75–b and adduced evidence regarding, *inter alia:* (1) Verbeek's criminal investigation of Teller's daughter for cocaine use/sale and driving while intoxicated; and (2) disparate treatment by Teller against Verbeek compared to treatment of Hager, Hanrahan, and Kametler, each of whom Verbeek alleged had engaged in illegal or improper conduct but was either not disciplined or received only a reprimand.

On July 28, 1996, following the hearing, H.O. Kearon found Verbeek not guilty of certain charges concerning dereliction of duty, threatening members of the police department, and interfering with a departmental investigation. However, H.O. Kearon found Verbeek guilty of certain charges of dereliction of duty and insubordination, allegedly based on "'suspect', albeit corroborated testimony of Hanrahan who [H.O. Kearon] concluded 'did attempt to induce another witness to testify falsely' and on the 'credible' testimony of Teller and Lt. Doyle." Complaint ¶ 20. H.O.

Kearon rejected Verbeek's whistleblower defense, although he allegedly found that Verbeek did initiate or attempted to initiate criminal investigations of Teller's daughter. H.O. Kearon recommended that Verbeek be demoted from sergeant to police officer. H.O. Kearon later admitted that "he had 'ruled harshly' against [Verbeek] 'out of 27 years of knowing Chief Teller and the Chief's association'" and that he "imposed demotion as a penalty out of 'deference' to Teller." Complaint ¶ 22.

After the hearing, Teller "summarily demoted" Verbeek to patrolman, subordinate to Hager. Complaint ¶ 21. In demoting Verbeek, Teller allegedly was motivated "in whole and/or in substantial respect by reason of [Verbeek's] evidence, adduced at the disciplinary hearing, regarding corruption and/or maladministration of the Police Department and criminal activity engaged in by members of the Department." *Id.* The demotion was ratified by the Village Board of Trustees (the "Board").

On August 7, 1996, Verbeek returned to duty and discovered that his locker at police headquarters had been broken into and that his personal and other property had been stolen. That same day, Teller ordered Verbeek not to speak with the Village trustees. During August 1996, Teller issued orders to Verbeek (1) forbidding him from reporting the burglary to other law enforcement agencies; (2) forbidding him to meet, or request to meet, any other officer in the department; and (3) forbidding him from supervising any other police officer in the department. Teller also issued an order forbidding other officers from speaking with Verbeek about the disciplinary hearing. Teller barred outside law enforcement agencies from investigating the burglary and thereafter identified two police officers as suspects in the burglary. Moreover, Hager,

at Teller's request, suspended Verbeek from the Police Benevolent Association ("PBA").

On or about October 29, 1996, Teller allegedly "sought to prefer" additional disciplinary charges against Verbeek in retaliation against Verbeek for having "adduced evidence of misconduct and/or criminal behavior by members of the Department and/or certain of their family members." However, Teller allegedly was "rebuffed" by the Village Board. Nevertheless, Teller and Toomey "entered in an agreement to draft and prefer" additional "retaliatory disciplinary charges" against Verbeek, charges Teller "subsequently admitted were in substantial respect entirely fabricated." Complaint ¶ 32. On December 30, 1996, Toomey and Teller charged Verbeek, "without authority or permission of the Village Board and contrary to a directive of the [Village] Mayor," Complaint ¶ 33, and then suspended and expelled Verbeek from police headquarters.

The Board then discharged Toomey because of the "unlawful preferral" of charges against Verbeek, Complaint ¶ 34, and retained Scricca as Village counsel. Scricca arranged to have the Village retain Nicholas Campasano ("Campasano"), a close personal friend and business associate of Scricca's law partner, as the hearing officer for the second disciplinary proceeding. Neither Scricca nor Campasano disclosed that relationship. To insure that the disciplinary proceedings moved forward, Scricca "personally made threats" to Trustee James Czachur ("Czachur"), who opposed Verbeek's prosecution. Complaint ¶ 36. As a result of the threats, Czachur recused himself and did not vote on whether to proceed with the second disciplinary proceeding. Scricca "took no action to compel" the recusal of at least two other trustees who favored Verbeek's prosecution, namely, Trustees Raynor and

Wilenski (whose first name is not alleged), even though they had personal knowledge of the incidents underlying the disciplinary charges. *Id.* As a result, Raynor, Wilenski, and a third trustee approved prosecution of the disciplinary charges despite their being informed that the charges "were in substantial respect initially fabricated by Teller and Toomey." Complaint ¶ 37. Another trustee, Pescod (whose first name is not alleged), voted against the charges. Verbeek posits that but for Scricca's "improper conduct," the disciplinary charges "would never have been approved and/or prosecuted," and he never would have been terminated. *Id.*

To facilitate the prosecution, Scricca ordered Pescod to destroy documents that Pescod had prepared and in which Pescod "memorialized Teller's admission that he and Toomey had simply 'made up' the disciplinary charges" and in which he expressed "serious concern regarding the motivations of the persons" advocating the charges. Complaint ¶ 38. Scricca also "intimidated" Pescod, causing him to refrain from discussing these matters with other Board members. Complaint ¶ 39.

The charges against Verbeek alleged that he: (1) conducted a motor vehicle registration check on a vehicle registered to Kametler's brother Robert; (2) responded to a burglar alarm after learning that a member of the police department (who owned an alarm company and who did not want the customer whose alarm was sounding fined for a false alarm) arranged to have Verbeek's response aborted; (3) questioned an order issued to him by Nordman, who at the time held a superior rank over Verbeek because Teller had "illegal[ly] promoted" Nordman to sergeant; (4) refused to obey an "admittedly illegal" order by Nordman to release a prisoner who had been arrested by Verbeek for driving while under the influence

of drugs and possession of drugs; (5) failed to timely deliver a blood sample from that prisoner to the medical examiner's office; (6) threatened to arrest Nordman for interfering with the arrest/processing of that prisoner; and (7) failed to prepare a "street light list." Complaint ¶ 43.

Verbeek elected to have the second hearing open to the public, including the media. Campasano repeatedly expressed his "hostility to [Verbeek] and the media, manifesting a clear bias against [Verbeek] for having sought a public hearing and permitted [sic] the media to be present." Complaint ¶ 44.

During the second disciplinary proceeding, Teller, Hager, and Kametler each "sought to lobby" Pescod. Complaint ¶ 40. In this respect, Teller advised Pescod to "refrain from performing his duties as a Trustee . . . , 'not to interfere,' and let the hearing officer 'be the final word.'" *Id.* As for Hager and Kametler, they engaged in a "heated discussion" with Pescod during the pendency of the disciplinary proceeding, "impliedly threatened" him for interfering with the process, and "cautioned" him not to "derail" the process. Complaint ¶ 41. In addition, Hager "manipulated" the PBA to lobby the Board for the purpose of securing Verbeek's termination, and Hanrahan arranged for the PBA hiring of a private investigator to "tail" Czachur and report on his "associational [activities] and/or meetings." Complaint ¶ 42.

Teller and Hager, then PBA President, issued a memorandum instructing other police officers not to communicate with Verbeek, purportedly to impair Verbeek's defense of the charges and his exercise of associational rights. In addition, Teller sought to insure Verbeek's termination by telling the Board that if Verbeek was permitted to return to duty "his life would be in danger." Complaint ¶ 45.

Teller, Doyle, and Nordman "agreed to and thereafter testified falsely" against Verbeek in an effort to secure his termination, purportedly to punish Verbeek for "having engaged in First Amendment protected speech." Complaint ¶ 47. Verbeek asserts that he proved during the hearing that (1) Teller perjured himself in the first disciplinary hearing, when he falsely denied having knowledge of Verbeek's report to the "East End Task Force" concerning Teller's daughter's use/sale of cocaine; (2) Hager had, with impunity, engaged in an attempted rape, the circumstances of which Teller, Nordman, and others covered up by coercing the victim to sign a statement that she did not want to proceed with the matter; (3) Hager had, with impunity, stolen gasoline from the Village; (4) Scricca had tampered with the Board on the preferral of the charges, ordered the destruction of evidence regarding the fabricated nature of the charges, and coerced the recusal of one Board member whom she believed opposed (as retaliatory) the disciplinary charges, yet permitted other Board members who had personal knowledge of the underlying allegations in the charges to vote; (5) Teller and the PBA, acting through Hager, had directly sought to influence the Board during the pendency of the proceedings to secure Verbeek's termination; and (6) Teller and other police department members "actively interfered" with Verbeek's ability to defend against the charges by, *inter alia*, "prohibiting" him from communicating with other members of the police department. *Id.*

Following the conclusion of the hearing, Campasano issued his determination in a "Hearing Officer's Report and Recommendation," dated October 30, 1998 (the "R & R"). In the R & R, Campasano found Verbeek guilty of certain acts of misconduct and conduct unbecoming a police officer, and recommended that Verbeek's em-

ployment be terminated. Campasano ruled that he had no jurisdiction to determine Verbeek's claims that: (1) " 'Improper pressure was brought to bear on the Trustees to vote the Charges' "; (2) " 'Trustees voted illegally and were illegally prevented from voting' on the preferral of the charges"; (3) " 'Charges were brought illegally' "; (4) " 'Labor counsel unlawfully tampered with the Trustees' vote' "; (5) " 'Attempted intimidation of Trustee Czachur' had occurred"; (6) " 'Failure to disqualify Raynor and Wilenski' compromised [Verbeek's] rights"; (7) " 'Tampering with Trustee Pescod's vote and [intimidating him so as not to engage in] a discussion of the truthfulness of the Charges by the Board' had compromised [Verbeek's] rights"; (8) " 'Unlawful combinations of management and labor working to defeat [Verbeek's] right to Union representation' had occurred"; (9) " 'Improper pressure by Village employees' brought to influence the Board of Trustees had occurred"; (10) "Violations of New York State Civil Rights Law secrecy provisions had occurred with respect to [Verbeek's] records and impaired his defense"; and (11) "[Nordman] was unlawfully appointed 'Acting' Sergeant and, hence, he had no legal authority over [Verbeek], either under Village Law, Police Department Regulations or under the Civil Service Law." Complaint ¶ 48 (quoting R & R at 7). Campasano rejected Verbeek's whistleblower defense and, in so doing, purportedly "superficially considered evidence" that Hager had not been disciplined for engaging in an attempted rape and stealing gasoline from the Village. Complaint ¶ 49.

In finding Verbeek guilty and recommending his termination, Campasano allegedly was "motivated in whole and/or in substantial respect by," *inter alia*, some or all of the following: (1) "his personal rela-

tionship with Scricca's law partner"; (2) "his animus towards the media and anger over [Verbeek's] requiring the conduct of a public hearing on the disciplinary charges"; (3) "his desire to retaliate against [Verbeek] for [Verbeek's] having adduced evidence indicating gross misconduct by Scricca"; (4) "his having repeatedly engaged in improper *ex parte* communications with Scricca during the conduct of the hearing"; and (5) "his hostility towards [Verbeek] by reason of [Verbeek's] compelling the relocation of the hearing to Westhampton Beach where local residents could attend same," thereby requiring Campasano to "indulge in substantial commutes to/from hearing sessions and prompted him out of animosity to deliberately falsify his purported findings of fact to suggest that the conduct of the hearing in Westhampton Beach resulted in a reduction of members of the public attending the hearing." Complaint ¶ 50. Campasano allegedly falsely accused Verbeek of attempting to bribe him. *Id.* Moreover, according to Verbeek, Campasano caused a copy of the R & R to be delivered to the Village on or about October 30, 1998, but did not have a copy sent to Verbeek's counsel until three weeks later, thereby giving Verbeek's counsel only a matter of hours to prepare a submission concerning his punishment to the Village, which was scheduled to meet and vote on the R & R on November 23, 1998.

On November 23, 1998, the Board voted to terminate Verbeek's employment with the Village, as Campasano had recommended. Verbeek claims that defendant Trustees Dean, Raynor, and Barnett were: (1) "improperly influenced by reason of *ex parte* contacts between them and the PBA, Teller and/or Scricca which contacts were in part the subject of the disciplinary hearing record and in part were not evidenced by that record"; and (2) "motivated entirely and/or in substantial respect to punish [Verbeek] for his having expressed his opposition to Village corruption, misfeasance, malfeasance, criminal wrong doing [sic], and mismanagement of the Police Department." Complaint ¶¶ 53–55. Verbeek further asserts that the disciplinary proceedings constituted a selective prosecution against him for his exercise of First Amendment rights as "no disciplinary action and/or material disciplinary action" was brought against other officers for "criminal activities and/or considerably more serious and actual infractions of Departmental regulations than those with respect to which [Verbeek] was charged" including (1) "Hanrahan's attempt to suborn perjury and intimidate a witness in the disciplinary proceeding"; (2) "Nordman's perjury regarding his claim that he had never been arrested by [Verbeek] for DWI and attempting to leave the scene of an accident"; (3) "Nordman's admittedly unlawful order to release a prisoner who had been arrested on DWI charges and possession of illicit drugs"; (4) "Doyle's admission that he had beaten a 'Hymie' "; (5) "Doyle's cover-up of Teller's daughter's property damage motor vehicle accident, when she was apparently DWI and after which she fled the scene"; (6) Hager's attempted rape of a Village resident; (7) "Teller's threatening behavior when he sought to intimidate Trustee Pescod and dissuade him from performing his duties as Trustee with respect to the disciplinary proceeding"; (8) "Hager and Kametler's attempt to intimidate Pescod in that matter"; and (9) various other acts by Teller including "Teller's making of repeated anti-Semitic remarks"; "Teller's perjury during the first disciplinary [sic] as proven in the second hearing"; "Teller's insubordinate conduct in preferring, in cooperation with Toomey, disciplinary charges which he had been forbidden to prefer"; "Teller's admitted preferral, albeit without

authority, of fabricated disciplinary charges"; "Teller's unlawful promotion of Nordman"; and "Teller's countenancing of a police officer's interference with [Verbeek's] response to a burglar alarm in order to spare that officer's client (for whom he, the officer, maintained the burglar alarm system) a possible fine for a false alarm." Complaint ¶ 56.

Based on more than 20 pages of factual allegations, Verbeek asserted seven claims—five federal claims and two supplemental state claims. As for his federal claims, Verbeek asserted: (1) violation of his First Amendment right to free speech ("first claim" or "free speech/retaliation claim"); (2) violation of his First Amendment right to freedom of association ("second claim"); (3) violation of his First Amendment right to petition the government for a redress of grievances ("third claim"); (4) violation of his Fourteenth Amendment right to equal protection, in that he was selectively prosecuted based on his "whistleblowing" concerning matters of public concern ("fourth claim" or "equal protection/selective prosecution claim"); and (5) violation of his Fourth Amendment right to be free from unlawful search and seizure, based on the burglary of his locker ("fifth claim"). As for his supplemental state claims, Verbeek asserted: (1) that the disciplinary determination was "arbitrary, capricious, and otherwise illegal" and must be vacated under New York Civil Practice Law and Rules ("CPLR") Article 78 (the "sixth claim" or "Article 78 claim"); and (2) that Nordman's promotion to sergeant was "unlawful, null and void" ("seventh claim"). As for relief, Verbeek demanded, *inter alia*, compensatory and punitive damages and reinstatement with back pay and benefits.

As for the Article 78 claim, Verbeek requested that this Court vacate the disciplinary hearing determination, because it was "arbitrary, capricious, and otherwise illegal" for a variety of reasons, including: (1) "Scricca's tampering with the Village Board's vote on the preferral of the disciplinary charges"; (2) Campasano's overt bias and hostility towards [Verbeek]; (3)"Teller and/or the PBA's tampering with the Board of Trustees to influence to influence the outcome of the disciplinary [sic] and insure that [Verbeek] was terminated from the Village's employ"; (4) "Teller, Hager, and Kametler's threats regarding Trustee Pescod's attempt to ascertain whether there was an impermissible retaliation motive which prompted the preferral/prosecution of the disciplinary charges"; (5) "Scricca's order to Pescod to destroy evidence material to Teller and Toomey's fabrication of disciplinary charges out of apparent retaliatory motives"; (6) "Attempted intimidation, by the PBA and others, of Trustee Czachur"; (7) "Joint actions taken by the PBA and Teller to impair [Verbeek's] right of association and to undercut his ability to defend himself"; (8) "Nordman's illegal status as a 'sergeant' which unlawful status precluded him from giving lawful orders to [Verbeek] which orders were the subject of the disciplinary charges"; (9) "Campasano's deliberate delay in providing [Verbeek] his disciplinary report and recommendation for some three weeks after he provided same to the Village—a circumstance which denied [Verbeek] a meaningful opportunity to address the Village with respect to punishment before it voted on November 23, 1998"; and (10) "Selective prosecution of [Verbeek]." Complaint ¶ 69.

By Memorandum and Order dated September 29, 2000, this Court dismissed Verbeek's sixth claim, the Article 78 claim, and stayed this action to allow Verbeek to pursue an Article 78 proceeding in state court. In addition, this Court denied defendants' motion to dismiss without prejudice. Subsequently, Verbeek advised this

Court that he would not be pursuing an Article 78 proceeding, and this Court lifted the stay. Defendants now renew their motion to dismiss.

## II. DISCUSSION

Defendants raise a number of grounds for dismissal of the complaint. Defendants argue, *inter alia,* that: (1) the complaint must be dismissed under the *Rooker–Feldman* doctrine; (2) the first and fourth claims are barred by collateral estoppel; (3) the third, fifth, and seventh claims fail to state a claim; (4) the complaint fails to state a claim against the Village; and (5) the individual defendants are entitled to absolute immunity or, alternatively, qualified immunity.

### A. *Rooker–Feldman Doctrine*

■ Defendants argue that Verbeek's complaint must be dismissed under the *Rooker–Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under the *Rooker–Feldman* doctrine, the district court lacks subject matter jurisdiction over a case that effectively seeks appellate review of a state court judgment. *Moccio v. Office of Court Admin.,* 95 F.3d 195, 197 (2d Cir.1996); *Storck v. Suffolk County Dept. of Social Servs.,* 62 F.Supp.2d 927, 938 (E.D.N.Y. 1999). In other words, a district court lacks subject matter jurisdiction if a federal claim is "inextricably intertwined" with a state court judgment. *Feldman,* 460 U.S. at 483 n. 16, 103 S.Ct. 1303. Defendants argue that similar deference is due the determinations made in the disciplinary proceedings against Verbeek under Civil Service Law § 75. This Court disagrees. The *Rooker–Feldman* doctrine does not apply to the quasi-judicial state administrative proceedings at issue. *See Van Harken v. City of Chicago,* 103 F.3d 1346, 1348–49 (7th Cir.1997); *Narey v. Dean,* 32 F.3d 1521, 1525 (11th Cir.1994); *Scott v. Flowers,* 910 F.2d 201, 206 (5th Cir.1990); *see also Birmingham v. Ogden,* 70 F.Supp.2d 353, 361–65 (S.D.N.Y.1999) (concluding *Rooker–Feldman* doctrine not applicable to § 1983 action challenging quasi-judicial determinations of board of police commissioners in Civil Service Law § 75 hearing). Thus, *Rooker–Feldman* does not present a bar to this action.

### B. *Collateral Estoppel*

■ Defendants argue that Verbeek's first and fourth claims, (*i.e.,* his free speech/retaliation claim and equal protection/selective prosecution claim), based on retaliation and selective enforcement for "whistleblowing," are barred by issue preclusion. The preclusive effect of a New York judgment in a subsequent federal action is determined by New York law. *See* 28 U.S.C. § 1738; *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Under New York law, issue preclusion bars " 'a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same.' " *Burgos v. Hopkins,* 14 F.3d 787, 792 (2d Cir.1994) (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984)). Moreover, under New York law, issue preclusion is extended to quasi-judicial administrative findings, such as those at issue here. *See Birmingham,* 70 F.Supp.2d at 362. For issue preclusion to apply, the following requirements must be met:

> (1) "there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the

present action," and (2) "there must have been a full and fair opportunity to contest the decision now said to be controlling."

*Id.* (quoting *Schwartz v. Public Administrator,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 960, 246 N.E.2d 725 (1969)); *see also Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987); *Rameau v. New York State Dep't of Health,* 741 F.Supp. 68, 70–71 (S.D.N.Y.1990).

■ As for Verbeek's free speech/retaliation claim, defendants argue that Campasano's rejection of Verbeek's "whistleblower" defense precludes this issue from being relitigated here. In rejecting the "whistleblower" defense, Campasano found that Verbeek failed to show that the "[c]harges were preferred against him solely as a result of his involvement with ... the investigations and/or arrests of Department relatives." R & R at 8–9. Verbeek initially argued that this Court cannot give preclusive effect to that finding primarily because it is not a "final" determination, since Verbeek had interposed an "Article 78 claim" as a supplemental state claim. As that claim has been dismissed, Verbeek further argues that Campasano's rejection of his whistleblower defense cannot preclude his free speech/retaliation claim for several additional reasons, including, *inter alia:* (a) the difference in the burdens of proof between the two, and (b) his lack of a full and fair opportunity to litigate the issue at the disciplinary proceeding. This Court agrees with Verbeek's argument concerning the differences in the burdens of proof and, therefore, need not address the other grounds. Under New York law, Verbeek's whistleblower defense required that he establish that the disciplinary proceeding was based "solely" on the employer's unlawful retaliatory action. *See* N.Y. Civ. Serv. Law § 75–b(3)(a). His free speech/retaliation claim, on the other hand,

requires only that he establish that the speech (in addition to being on a matter of public concern) was at least "a substantial or motivating factor" in the employer's adverse employment action, *see Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 274 (2d Cir.1996); *Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996); *Frank v. Relin,* 1 F.3d 1317, 1328 (2d Cir.1993). Thus, Verbeek need not establish that the Village was "solely" motivated by First Amendment animus to prevail on his free speech/retaliation claim. Accordingly, this Court rejects defendants' issue preclusion defense as to Verbeek's free speech/retaliation claim.

■ As for Verbeek's equal protection/selective prosecution claim, Verbeek claims that the disciplinary charges constituted "a selective prosecution motivated in part and/or in whole by reasons of [Verbeek's] exercise of his rights under the First Amendment." Complaint ¶¶ 56, 65. Defendants argue that Campasano's rejection of Verbeek's defense that other police officers in the Village were treated "proportionately less harsh" than Verbeek for their misconduct, *see* R & R at 9, bars Verbeek's assertion of his equal protection/selection prosecution claim. This Court disagrees. There is no identity of issues between the selective prosecution defense Verbeek asserted in the disciplinary proceeding and his equal protection/selective prosecution claim asserted here. The selective prosecution defense did not raise the issue of whether defendants' alleged selective treatment of him was prompted by his exercise of First Amendment rights, as does his equal protection/selective prosecution claim. *See Birmingham,* 70 F.Supp.2d at 371–72 (holding equal protection/selective prosecution claim requires plaintiff show selective treatment prompted by impermissible consideration, such as intent to discriminate

based on plaintiff's exercise of protected speech, or malicious or bad faith intent to injure). Accordingly, this Court rejects defendants' issue preclusion defense as to Verbeek's equal protection/selective prosecution claim.

### C. Third Claim: Right to Petition

It is unclear from Verbeek's arguments in opposition to the motion and from the complaint as to the purported basis for Verbeek's claim that his right to petition the government for a redress of grievances was violated. Accordingly, this claim is dismissed without prejudice.

### D. Fifth Claim: Unreasonable Search and Seizure

■ Verbeek's purported claim for unreasonable search and seizure fails to state a claim upon which relief can be granted. Verbeek fails to allege participation by any of the named defendants in the burglary. Verbeek's conclusory allegation that "two members of the Village Police Department" had been identified as "suspects" and that the burglary had been "ratified" by Teller are insufficient to state a claim. Accordingly, the fifth claim is dismissed without prejudice.

### E. Seventh Claim: Challenge to Nordman's Promotion to Sergeant

As for Verbeek's challenge to Nordman's promotion to sergeant, this Court agrees with defendants that this claim must be dismissed because Verbeek fails to state any basis upon which he may challenge that personnel determination. Verbeek also fails to allege any basis upon which this Court may exercise jurisdiction over that determination. Accordingly, the seventh claim is dismissed with prejudice.

### F. Claims Against the Village

As for Verbeek's § 1983 claims against the Village, defendants argue that these claims must be dismissed for failure to state a claim. It is well settled that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir.1983). Moreover, on a motion to dismiss, the allegations in the plaintiffs' complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam).

■ To state a § 1983 claim against a municipality, the plaintiff must allege that his constitutional rights were violated pursuant to a custom or policy of the municipality. *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In his claims against the Village, Verbeek does not use the words "custom" or "policy." His allegations, however, are at least sufficient to state a claim that the actions by the Village Board, in preferring the disciplinary charges against him and eventually terminating him, established a practice to retaliate against or selectively prosecute police officers who engage in disfavored speech. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances"). Accordingly, Verbeek's free speech/retaliation claim (first claim) and equal protection/selective prosecution claim (fourth claim) are sufficient as against the Village.

■ Verbeek's remaining § 1983 claim alleges violation of Verbeek's right to freedom of association (second claim). This

claim primarily concerns acts of defendants Teller and Hager (Police Chief and police officer, respectively) regarding Verbeek's association with the PBA. These allegations are not sufficient to state a claim against the Village, since it is not alleged, nor can it reasonably be inferred from the allegations made, that the infringement of this right was pursuant to a custom or policy of the Village. Accordingly, Verbeek's second claim is dismissed without prejudice as against the Village.

## G. *Absolute Immunity and Qualified Immunity*

Defendants argue that all of the individual defendants are entitled to absolute immunity because all of their alleged actions were taken "in furtherance of their prosecutorial authority" in that "each claim arises from the preferring and prosecution of disciplinary charges against [Verbeek]." Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defendants' Mem."), at 11. Alternatively, defendants argue that they are entitled to qualified immunity. Verbeek does not dispute that the disciplinary proceedings were quasi-judicial proceedings, but argues that none of the individual defendants is entitled to absolute or qualified immunity.

In determining whether an official's actions are absolutely immune from § 1983 liability, courts apply a "functional approach," *i.e.*, one "which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994). Absolute immunity applies to a prosecutor's conduct that is " 'intimately associated with the judicial phase of the criminal process,' but not to a prosecutor's acts of

investigation or administration." *Dory*, 25 F.3d at 83 (quoting *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993) (absolute immunity afforded to functions "integrally related to the judicial process"). When a prosecutor acts in the role of administrator or investigator, rather than as an advocate, his actions are protected only by qualified immunity, rather than absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 125–26, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997). Thus, absolute immunity protects a " 'prosecuting attorney who acted within the scope of his duties in initiating and pursuing' " a prosecution. *Id.* at 124, 118 S.Ct. 502 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1147 (2d Cir.1995). For example, absolute immunity shields a prosecutor from claims for allegedly presenting false evidence at a criminal trial, *Kalina*, 522 U.S. at 124–25, 118 S.Ct. 502, or even for conspiring to do so, *Dory*, 25 F.3d at 83 (noting that "fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because '[t]he immunity attaches to his function, not to the manner in which he performed it.' ") (quoting *Barrett v. United States*, 798 F.2d 565, 573 (2d Cir.1986)); *Pinaud*, 52 F.3d at 1148–49.

Moreover, absolute immunity applies not only to the prosecutor himself, but extends to "officials performing certain functions analogous to those of a prosecutor." *Butz v. Economou*, 438 U.S. 478, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Thus, prosecutorial immunity extends to executive officials who perform functions analogous to those of a prosecutor. *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir.1992). Therefore, an executive officials who initiates and brings administra-

tive proceedings is protected by absolute immunity. *Id.*

 Qualified immunity shields government officials from liability for civil damages if the challenged action "[did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Nevertheless, "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987). Thus, a government official claiming qualified immunity bears the burden of proving (1) that the conduct alleged did not violate clearly established rights of which a reasonable person would have known, or (2) that it was "objectively reasonable" for the defendant to believe that the conduct did not violate plaintiff's clearly established constitutional rights. *McCullough v. Wyandanch Union Free Sch. Dist.*, 187 F.3d 272, 278 (2d Cir.1999). "A right is considered to be 'clearly established' if '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir.1998) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

### 1. *Toomey*

 Toomey, as counsel to the Village, and Teller allegedly initiated the second disciplinary proceeding against Verbeek based on "fabricated" charges. Complaint ¶ 37. Verbeek argues that Toomey is not entitled to absolute immunity because Too-

mey "acted beyond his jurisdiction" in "preferring" the charges against Verbeek. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Mem."), at 19. In this respect, Verbeek alleges that Toomey "preferred" the charges "without authority or permission of the Village Board and contrary to the directive of the Mayor," and that the Board subsequently terminated Toomey's employment "as a result of Toomey and Teller's unlawful preferral of the ... charges." Complaint ¶¶ 33–34. Despite Verbeek's arguments, his allegations also state that the Board subsequently "approved" the charges and their prosecution. Contrary to Verbeek's arguments, Toomey is entitled to absolute immunity based on the allegations of the complaint. Toomey's alleged act of "preferring" charges against Verbeek was a prosecutorial function involving the initiation of a prosecution, performed by Toomey in his role as counsel appointed by the Village to "prosecute" disciplinary charges. *See Buckley*, 509 U.S. at 272–73, 113 S.Ct. 2606. Verbeek's conclusory allegations that Toomey acted outside his authority, that the charges were "fabricated," and that there was an "agreement" between Toomey and Teller to fabricate charges do not negate Toomey's entitlement to absolute immunity. *See Dory*, 25 F.3d at 83. Accordingly, Toomey is entitled to absolute immunity; therefore, the complaint is dismissed as against Toomey.

### 2. *Scricca*

 As for Scricca, the complaint alleges that she replaced Toomey as counsel and that she took steps to "insur[e] that the second disciplinary proceeding move forward," including, *inter alia*, threatening Trustee Czachur (who opposed the charges), intimidating Trustee Pescod and ordering Pescod to destroy documents,

and *ex parte* communications with Campasano. Complaint ¶¶ 35–37. Verbeek argues that Scricca is not entitled to absolute immunity because "most of her offending conduct occurred prior to the preferral of disciplinary charges," and to the extent it occurred after the charges were preferred, "the behavior was wildly beyond her jurisdiction." Plaintiff's Mem. at 20 (citations omitted). Contrary to Verbeek's arguments, Scricca is entitled to absolute immunity based on the allegations of the complaint. Scricca's alleged acts were prosecutorial functions involving the initiation of a prosecution and the prosecution of charges, performed in her role as counsel appointed by the Village to "prosecute" the disciplinary charges. *See Buckley,* 509 U.S. at 272–73, 113 S.Ct. 2606. Moreover, to the extent Verbeek may be alleging that Scricca "conspired" with other defendants, such an allegation would not negate her entitlement to absolute immunity. *See Dory,* 25 F.3d at 83. Accordingly, Scricca is entitled to absolute immunity; therefore, the complaint is dismissed as against Scricca.

### 3. *Dean, Raynor, and Barnett*

██ As for the defendant trustees, Dean, Raynor, and Barnett, defendants argue that they are entitled to absolute immunity for their acts in approving the prosecution of charges in the disciplinary proceedings. Verbeek, on the other hand, argues that these trustees are sued, not solely for approving the prosecution of charges, but because they "unlawfully demoted and then terminated [Verbeek]," acts "having nothing whatsoever to do with the judicial process." Plaintiff's Mem. at 20. Contrary to Verbeek's arguments, the acts of Dean, Raynor, and Barnett in approving the prosecution of charges and then imposing punishment, *i.e.,* accepting the hearing officer's recommendations, are entitled to absolute immunity. *See Spear,*

954 F.2d at 66. Accordingly, the complaint is dismissed as against Dean, Raynor, and Barnett.

### 4. *Nordman and Hanrahan*

██ As for Nordman and Hanrahan, Verbeek essentially alleges that Nordman conspired to testify falsely at the second disciplinary proceeding to punish Verbeek and insure his termination for engaging in protected speech, Complaint ¶ 47, and that Hanrahan took part in the conspiracy by "attempt[ing] to suborn perjury and intimidat[ing] a witness in the [first] disciplinary proceeding," Complaint ¶¶ 20(c), 56. Upon consideration of the complaint, this Court concludes that Verbeek's conclusory allegations of conspiracy and false testimony are not sufficient to state a claim. *Dwares v. City of New York,* 985 F.2d 94, 99–100 (2d Cir.1993). In any event, Nordman and Hanrahan are entitled to absolute immunity from suit for allegedly testifying falsely at the disciplinary proceedings. *Cf. White v. Frank,* 855 F.2d 956, 961 (2d Cir.1988) (recognizing availability of [absolute] immunity where liability is asserted solely because of an officer's role in testifying at a judicial proceeding). Accordingly, the complaint is dismissed as against Nordman and Hanrahan.

### 5. *Teller*

As for Teller, Verbeek alleges that Teller had the disciplinary proceedings brought against him and carried out the recommended punishments in retaliation for Verbeek's engaging in speech on matters of public concern and in selective treatment of Verbeek to inhibit or punish his exercise of his free speech rights. Verbeek further alleges, *inter alia,* that Teller: barred Verbeek from reporting the alleged August 1996 burglary of his locker to other law enforcement agencies; barred Verbeek from speaking to other officers

and members of the Board; barred other officers from speaking with Verbeek; and had Verbeek suspended from the PBA; fabricated the charges leading to the second disciplinary proceeding and suspended and expelled Verbeek from police headquarters; and threatened Pescod and engaged in *ex parte* communications with members of the Board to insure Verbeek's termination. These acts were allegedly taken by Teller to impair Verbeek's exercise of associational rights and to impair his defense in the second disciplinary proceeding. Verbeek also alleges that he proved in the second disciplinary proceeding that Teller perjured himself in the first disciplinary proceeding.

Defendants argue that Teller is entitled to absolute immunity from all claims because he was "authorized pursuant to [Civil Service Law § 75] to undertake the investigation and adjudication of the misconduct charges against [Verbeek]." Defendants' Mem. at 11. Verbeek argues that Civil Service Law § 75 does not confer any authority upon the chief of police of a village to "adjudicate" disciplinary proceedings, Plaintiff's Mem. at 19, and that Teller, therefore, is not entitled to absolute immunity regarding those charges and proceedings. In this respect, Verbeek argues that "[i]n both disciplinary proceedings the adjudication of guilt and imposition of punishment were made by the Village Board." Plaintiff's Mem. at 18.

■■■ Upon consideration of Verbeek's arguments and the allegations of the complaint, the Court concludes that Teller is not entitled to absolute immunity for allegedly fabricating charges against Verbeek in retaliation for his engaging in protected speech and in selective enforcement to inhibit or punish Verbeek's exercise of free speech, as Teller is not alleged to have performed functions analogous to those of a prosecutor. *See Spear,* 954 F.2d

at 66. Rather, Verbeek targets Toomey and Scricca as counsel initiating and prosecuting the charges against Verbeek and the Board members as authorizing the charges and disciplinary proceedings and then imposing punishments. In addition, Teller obviously is not entitled to absolute immunity for allegedly violating Verbeek's First Amendment rights by acts such as barring Verbeek from reporting the alleged August 1996 burglary of his locker to other law enforcement agencies; barring other officers in the department from speaking with him; barring Verbeek from speaking with other officers and members of the Board; and having Verbeek suspended from the PBA.

■■■ However, to the extent that Verbeek argues that he was denied due process (even though not asserted as a claim in the complaint) because Teller's acts "impaired" his defense of the disciplinary proceedings, Verbeek's allegations are insufficient as a matter of law. Verbeek has no claim for denial of due process, because the availability of an Article 78 proceeding constituted an adequate post-deprivation remedy. *See Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880–81 (2d Cir.1996).

■■■ As for the application of qualified immunity, the Court concludes that Teller is not entitled to qualified immunity for those acts alleged to violate Verbeek's free speech and equal protection rights, as those rights were, in the situation alleged, clearly established, *see Connick v. Myers,* 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.,* 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *see also Vasbinder v. Ambach,* 926 F.2d 1333, 1341 (2d Cir.1991) (recognizing First Amendment protection of government employee from discharge or retaliation for speech upon matters of public concern); *Rookard v. Health & Hospi-*

*tals Corp.*, 710 F.2d 41, 46 (2d Cir.1983) (same); *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994) (recognizing equal protection claim based on selective enforcement); *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir.1980) (same); *Mascetta v. Miranda*, 957 F.Supp. 1346, 1359 (S.D.N.Y. 1997) (same); and this Court cannot say as a matter of law that it was objectively reasonable for Teller to believe that such acts did not violate those rights. Moreover, defendants provide no argument that Verbeek's associational right was not clearly established as well. Assuming that right was clearly established, this Court cannot say as a matter of law that it was objectively reasonable for Teller to believe that his conduct did not violate that right.

Accordingly, all claims except the first, second, and fourth claims are dismissed as against Teller.

### 6. *Hager*

 As for Hager, Verbeek alleges that Hager participated in the "conspiracy" by suspending Verbeek from the PBA and issuing a memo barring other officers in the department from speaking with Verbeek, to prevent Verbeek's exercise of associational rights and to impair Verbeek's defense in the second disciplinary proceeding; and by threatening Pescod and engaging in *ex parte* communications with members of the Board to insure Verbeek's termination. Upon review of the complaint, the Court concludes that Hager is not entitled to absolute or qualified immunity to the extent that Verbeek claims that Hager violated Verbeek's associational rights by Hager's acts of suspending Verbeek from the PBA and issuing a memo barring other officers in the department from speaking with Verbeek. Defendants make no argument that in the situation alleged Verbeek's associational right was

not clearly established; and assuming that right was clearly established, this Court cannot say as a matter of law that it was objectively reasonable for Hager to believe that such conduct did not violate that right. However, this Court finds that Verbeek's conclusory allegations of conspiracy are insufficient as a matter of law. *See Dwares*, 985 F.2d at 100. Moreover, to the extent that Verbeek argues that he was denied due process (even though not asserted as a claim in the complaint) because Hager's acts "impaired" Verbeek's defense of the disciplinary proceedings, Verbeek's allegations are insufficient as a matter of law. Verbeek has no claim for denial of due process, because, as previously noted, the availability of an Article 78 proceeding constituted an adequate post-deprivation remedy. *See Hellenic*, 101 F.3d at 880–81.

Accordingly, all claims except the second claim are dismissed as against Hager.

## III. *CONCLUSION*

For the above reasons, defendants' motion to dismiss is granted in part and denied in part. Defendants' motion to dismiss is granted to the extent that (1) the third claim, for violation of the right to petition, is dismissed without prejudice; (2) the fifth claim, for unlawful search and seizure, is dismissed without prejudice; (3) the seventh claim, based on Nordman's promotion to sergeant, is dismissed with prejudice; (4) the complaint is dismissed with prejudice as against Toomey, Scricca, Dean, Raynor, Barnett, Nordman, and Hanrahan; (5) the second claim is dismissed without prejudice as against the Village; (6) all claims except the first, second, and fourth claims are dismissed as against Teller; and (7) all claims except the second claim are dismissed as against

Hager. In all other respects, defendants' motion is denied.

SO ORDERED.